IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

LOUIS BRIAN OLESEN, II,
BARBARA OLESEN,
AMERICAN SHOOTERS SUPPLY, INC.,

                    Plaintiffs,

                                         06-CV-0959FJS/DRH

     v.

JOHN MORGAN, Special Agent of
the Federal Bureau of Alcohol,
Tobacco and Firearms,

                    Defendant.

_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, MOTION FOR
SUMMARY JUDGMENT**

                                      KATHLEEN M. MEHLTRETTER
                                      United States Attorney
                                      Western District of New York

MARY E. FLEMING
Special Assistant U.S. Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
Attorney for Defendant
Bar Roll No. 514110

John R. Kodadek (on the brief)
Senior Attorney, Litigation Division
Office of the Chief Counsel, Room 4E329
Bureau of Alcohol, Tobacco, Firearms and Explosives
99 New York Avenue, NE
Washington, DC 20226

## TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . .  i

I.  INTRODUCTION AND RECENT PROCEDURAL HISTORY  . . . . . . . 1

II.  FACTS AND BACKGROUND  . . . . . . . . . . . . . . . . . 2

III.  LEGAL ARGUMENT  . . . . . . . . . . . . . . . . . . . . 3

    POINT I
        Plaintiffs' Constitutional Claims Beyond
        the Three-Year Limitations Period Are Barred  . . . . 3

    POINT II
        ASSI Does Not Have Standing to Bring an Equal
        Protection Claim  . . . . . . . . . . . . . . . . . 6

    POINT III
        Morgan is Protected by Qualified Immunity . . . . . . 7

    POINT IV
        Morgan Did Not Violate Plaintiffs' First Amendment
        Rights  . . . . . . . . . . . . . . . . . . . . . 10

        1.  Plaintiffs Have Failed to Establish That Their
            "Speech" is Protected by the First Amendment. . 11

        2.  Plaintiffs have failed to establish that Morgan
            took adverse action against them. . . . . . . . 17

        3.  Plaintiffs Have Failed to Establish a Causal
            Connection Between the Protected Speech and the
            Adverse Action. . . . . . . . . . . . . . . . 20

        4.  The Conduct at Issue Was Not Clearly Established
            at the Time of the Events in Question. . . . . 25

    POINT V
        Morgan Did Not Violate Plaintiffs'
        Fifth Amendment Right to Equal Protection . . . . . 27

IV. CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . 30

## TABLE OF AUTHORITIES

### FEDERAL CASES

ABB Indus. Sys., Inc. v. Prime Tech., Inc., 120 F.3d 351 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . 29

African Trade & Information Center, Inc. v. Abromaitis, 294 F.3d 355 (2d Cir. 2002) . . . . . . . . . . . . . . . . . 9, 26, 28

Anderson v. Creighton, 483 U.S. 635 (1987) . . . . . . 7, 9, 10

Ansell v. D'Alesio, 485 F. Supp. 2d 80 (D. Conn. 2007) . . . 14

Ashcroft v. Iqbal, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)  10

Bd. of County Comm. v. Umbehr, 518 U.S. 668 (1996) . . . . 14, 25

Beechwood Restorative Care Ctr. v. Leeds, 436 F.3d 147 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . 24

Blue v. Koren, 72 F.3d 1075 (2d Cir. 1995) . . . . . . . . . 24

Blum v. Schlegel, 18 F.3d 1005 (2d Cir. 1994) . . . . . . . 17

Butz v. Economou, 438 U.S. 478 (1978) . . . . . . . . . . . 7

Cahill v. O'Donnell, 75 F. Supp. 2d 264 . . . . . . . . 16, 17

Cifarelli v. Village of Babylon, 93 F.3d 47 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) . . . . . . . . . . . . . . . . 21

Connick v. Myers, 461 U.S. 138 (1983) . . . . . . . . . . . 15

Coward v. Gilroy, 2007 WL 1220578 (N.D.N.Y Apr. 24, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 26

Coward v. Gilroy, 306 Fed. Appx. 647 (2d Cir. 2009). . 13, 15, 26

Curley v. Village of Suffern, 268 F.3d 65 (2d Cir. 2001) . . 24

DeMuria v. Hawkes, 328 F.3d 704 (2d Cir. 2003) . . . . . 27, 28

Demuria v. Marshall, 2004 WL 2216524 (D. Conn. Sept. 24, 2004)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Deravin v. Kerik, 2007 WL 1029895 . . . . . . . . . . . . . 21

Eagleston v. Guido, 41 F.3d 865 (2d Cir. 1994) . . . . . . . 3

Economic Opportunity Comm'n of Nassau County, Inc. v. County of
Nassau, 106 F. Supp. 2d 433 (E.D.N.Y. 2000) . . . . . . . . 20

Olesen v. Morgan, 2008 WL 5157459 (N.D.N.Y Dec. 8, 2008)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Olesen v. Morgan, 2009 WL 2045682 at *7 (N.D.N.Y. July 8, 2009)
. . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

Ford v. Moore, 237 F.3d 156 (2d Cir. 2001) . . . . . . . . . 7

Friends of the Earth v. Laidlaw, 528 U.S. 167, 120 S. Ct. 693
(2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Gilles v. Repicky, 511 F.3d 239 (2d Cir. 2007) . . . . . . . 8

Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty., 252
F.3d 545 (2d Cir. 2001) . . . . . . . . . . . . . . . . . 21

Hargett v. N.Y. City Transit Auth., __ F.Supp.2d __, 2009
WL 2391577 . . . . . . . . . . . . . . . . . . . . . . . 21

Hickey-McAllister v. British Airways, 978 F. Supp. 133 (E.D.N.Y.
1997) . . . . . . . . . . . . . . . . . . . . . 14, 15, 26

Higazy v. Templeton, 505 F.3d 161 (2d Cir. 2007) . . . . . 8, 9

Hollander v. Am. Cyanamid Co., 895 F.2d 80 (2d Cir. 1990)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508 (2002) . . . . . 9

Housing Works, Inc. v. Giuliani, 56 Fed. Appx. 530 (2d Cir. 2003)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Hunter v. Bryant, 502 U.S. 224, 112 S. Ct. 534, 116 L. Ed. 2d 589
(1991) (per curiam) . . . . . . . . . . . . . . . . . . . 7

ii

Illinois v. Gates, 462 U.S. 213 (1983) . . . . . . . . . . 18

Inturri v. City of Hartford, 365 F. Supp. 2d 240 (D. Conn. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 28

Jenkins v. City of New York, 478 F.3d 76 (2d Cir. 2007) . . . . 7

Kelsey v. County of Schoharie, 567 F.3d 54 (2d Cir. 2009) . . 7,8

LaTrieste Restaurant and Cabaret, Inc. v. Village of Port Chester, 40 F.3d 587 (2d Cir. 1994) . . . . . . . . . . . . 28

Lewis v. Cowen, 165 F.3d 154 (2d Cir. 1999) . . . . . . . . 15

Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . 28

McCullough v. Wyandanch Union Free School Dist., 187 F.3d 272 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . 21

Mitchell v. Forsyth, 472 U.S. 511 (1985) . . . . . . . . . 7, 9

Mozzochi v. Borden, 959 F.2d 1174 (2d Cir. 1992) . . . . . . 24

Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977) . . . . . . . . . . . . . . . . . . . . . . . . 23

Nonnenmann v. City of New York, 2004 WL 1119648 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Pacific Capital Bank, N.A. v. Connecticut, 542 F.3d 341 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 6

Pearson v. Callahan, 129 S. Ct. 808 (2009) . . . . . . . . 7, 8

Piscottano v. Murphy, 511 F.3d 247 (2d Cir. 2007) . . . . . . 15

Rockland Vending Corp. v. Creen, 2009 WL 2407658 . . . . . . 16

Ruotolo v. City of New York, 514 F.3d 184 (2d Cir. 2008) . . 15

Salim v. Proulx, 93 F.3d 86 (2d Cir. 1996) . . . . . . . . . 7

Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001) . . . 8, 10

Scott v. Coughlin, 344 F.3d 282 (2d Cir. 2003) . . . 11, 22, 23

iii

Shechter v. Comptroller of City of New York, 79 F.3d 265 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . 9

Siegert v. Gilley, 500 U.S. 226, 111 S. Ct. 1789 (1991) . . . . 7

Singer v. Fulton County Sheriff, 63 F.3d 110 (2d Cir. 1995) 23

Singleton v. City of New York, 632 F.2d 185 (2d Cir. 1980) . . 5

Skehan v. Village of Mamaroneck, 465 F.3d 96 (2006) . . . . . 14

Smith v. Mosley, 532 F.3d 1270 (11th Cir. 2008) . . . . . 22, 23

Spang v. Katonah-Lewisboro Union Free Sch. Dist., 626 F. Supp. 2d 389 . . . . . . . . . . . . . . . . . . . . . . 23

Tapia-Ortiz v. Doe, 171 F.3d 150 (2d Cir. 1999) . . . . . . . 3

Texas v. Brown, 460 U.S. 730 (1983) . . . . . . . . . . . . 18

Timmins v. Toto, 91 Fed. Appx. 165 (2d Cir. 2004) . . . . . . 9

Trader Vic's Ltd v. O'Neill, 169 F. Supp. 2d 957 (N.D. Ind. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Tuskowski v. Griffin, 359 F.Supp 2d 225 (D. Conn. 2005) . . . 28

United States v. Bryser, 95 F.3d 182 (2d Cir. 1996) . . . . . 13

United States v. Collins, 957 F.2d 72 (2d Cir. 1992) . . . . . 6

United States v. Gallo, 863 F.2d 185, 192 (2d Cir. 1988) . . 19

United States v. Laufer, 245 F. Supp. 2d 503 (W.D.N.Y. 2003) 19

United States v. Travisano, 724 F.2d 341 (2d Cir. 1983) . . . 18

Village of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct. 1073 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Wayte v. United States, 470 U.S. 598 (1985) . . . . . . . . 13

White Plains Towing Corp. v. Patterson, 991 F.2d 1049 (2nd Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

Wilson v. Layne, 526 U.S. 603 (1999) . . . . . . . . . . . . 7

Wong v. Doar, 571 F.3d 247 (2d Cir. 2009) . . . . . . . . . . 6

<u>Wright v. N.Y. City Off Track Betting Corp.</u>, 2008 WL 762196
(S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . 21

<u>Yerushalayim v. United States Dep't of Corr.</u>, 374 F.3d 89 (2d
Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

<u>Zenni v. Hard Rock Café Int'l. Inc.</u> (N.Y.). 903 F. Supp. 644
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>Zieper v. Metzinger</u>, 474 F.3d 60 (2d Cir. 2007) . . . 7, 9, 10

FEDERAL STATUTES

18 U.S.C. § 922(a)(1)(A) . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 923 . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 923(d)(2) . . . . . . . . . . . . . . . . . . . . 19

28 U.S.C. § 1361 . . . . . . . . . . . . . . . . . . . . . . 20

FEDERAL RULES

Fed.R.Civ.P. Rule 12(b)(1) . . . . . . . . . . . . . . . 1, 30

Fed.R.Civ.P. Rule 12(b)(6) . . . . . . . . . . . . . . . 1, 30

Fed.R.Civ.P. Rule 56(b) . . . . . . . . . . . . . . . . . 1, 30

v

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

LOUIS BRIAN OLESEN, II,
BARBARA OLESEN,
AMERICAN SHOOTERS SUPPLY, INC.,

              Plaintiffs,

                             06-CV-0959FJS/DRH

   v.

JOHN MORGAN, Special Agent of
the Federal Bureau of Alcohol,
Tobacco and Firearms,

              Defendant.

_____

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

## I.   INTRODUCTION AND RECENT PROCEDURAL HISTORY[1]

Defendant, John Morgan ("Morgan"), Special Agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), submits this Memorandum of Law in Support of the Defendant's Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Fed.R.Civ.P. Rule 12(b)(1) and Rule 12(b)(6), or, in the alternative, Motion for Summary Judgment pursuant to Fed.R.Civ.P. Rule 56(b).

On January 20, 2009, plaintiffs filed an Amended Complaint asserting three causes of action: a First Amendment retaliation

_____

[1]For a complete procedural history, please refer to the Court's latest Memorandum-Decision and Order. Ex. J, at *1.

claim, a Fourth Amendment claim and a Fifth Amendment procedural due process claim. Dkt. #22; Ex. A.[2]

On February 13, 2009, Morgan filed a Motion to Dismiss Plaintiffs' Amended Complaint. Dkt. #24. After the parties fully briefed the issues raised in the Defendant's Motion to Dismiss (Dkt. #s 26, 28, 30), on July 8, 2009, this Court issued a Memorandum-Decision and Order granting in part and denying in part Defendant's Motion to Dismiss. Dkt. # 31; Ex. J. Pursuant to that Order, the Court dismissed Plaintiffs' Fourth Amendment claim, the Plaintiffs' Fifth Amendment due process claims, and any First Amendment retaliation claim American Shooters Supply, Inc. ("ASSI") may be asserting. Ex. J, at *8. Accordingly, the only claims that remain in this action are: "(1) a First Amendment retaliation claim on behalf of Plaintiffs Brian Olesen and Barbara Olesen, and (2) a class-of-one equal protection claim on behalf of all Plaintiffs." Ex. J, at *7.

## II.   FACTS AND BACKGROUND

For a complete recitation of the facts and background in this matter, please refer to the Declarations of Patricia Power, annexed as Exhibit B and of Rory D. O'Connor, annexed as Exhibit C to the Defendant's Appendix.

---

[2]The Exhibits referred to herein are annexed to the Defendant's Appendix filed in support of this motion.

### III.  LEGAL ARGUMENT

### POINT I

### Plaintiffs' Constitutional Claims Beyond
### the Three-Year Limitations Period Are Barred

The statute of limitations for a <u>Bivens</u> action arising in New York is three years. <u>See</u> <u>Tapia-Ortiz v. Doe</u>, 171 F.3d 150, 151 (2d Cir. 1999); <u>Yerushalayim v. United States Dep't of Corr.</u>, 374 F.3d 89, 91 (2d Cir. 2004). Under Federal law, an action "accrues when the plaintiff 'knows or has reason to know' of the harm." <u>Eagleston v. Guido</u>, 41 F.3d 865, 871 (2d Cir. 1994).

Plaintiffs allege:

> The actions of defendant John Morgan violated the First Amendment rights of plaintiff Brian Olesen by retaliating against Brian Olesen, Barbara Olesen and American Shooters Supply Inc. for protected conduct and/or speech, including but not limited to Brian Olesen reporting firearms violations against his former partner, James Frampton, and for plaintiff's questioning and/or protesting defendant John Morgan's actions in the investigation of Frampton and others.

Amended Complaint (hereafter "Ex. A"), ¶ 51.[3]  As a result, Plaintiffs allege that Brian Olesen became a "target" for investigation (Ex. A, ¶ 53); that "in or about the winter and spring 2003," Morgan attempted to persuade a State official to deny Brian Olesen's application for a State gun dealers license (Ex. A, ¶ 20); that between "February 2003 and June 2003, plaintiff Brian Olesen

---

[3] As noted by the Court, plaintiffs allegations of protected speech/conduct under the first Amendment concerned the reporting of Mr. Frampton's firearms violations to ATF and questioning/protesting the way defendant was handling the investigation of Frampton. Ex. J, at *7.

3

had pending his own application to obtain a federal firearms license," (Ex. A, ¶ 26); "was forced to withdraw his application," (Ex. A, ¶ 28); "forced . . . to consent to an auction of the assets and inventory" of his former partnership with Frampton (Ex. A, ¶ 22); and that Barbara Olesen's license was delayed (Ex. A, ¶¶ 53, 76). However, plaintiffs knew, or should have known, that all of these actions were beyond New York's three year statute of limitations, and, therefore, are time-barred.

Plaintiffs (1) admit that Brian Olesen reported the alleged infractions by Frampton in "late 2002, early 2003," (Ex. A, ¶ 12); (2) knew that Brian Olesen applied for a FFL in December 2002, and voluntarily withdrew such application, on or about April 2003, because, as stated by Mr. Olesen, his landlord would not allow a continuance of the lease at 1841 Central Avenue (see Ex. C, ¶ 21); (3) knew in early 2003 that Morgan met with State Justice Malone (see Ex. C, ¶20); (4) knew in March 2003 that the firearms inventory was consigned for auction (see Ex. C, ¶ 18);[4] (5) knew that the application for a FFL submitted by Barbara Olesen, as President of Guns, Inc. had not been approved as of July 23, 2003, when she changed the application to a sole proprietor, and that the FFL for

_____

[4]Plaintiffs knew, or should have known that: (1) by Order dated January 8, 2003, the Supreme Court, Albany County, appointed Paul T. Devane, Esquire as temporary receiver of American Tactical Systems, Inc.; (2) on March 14, 2003, both Frampton and Brian Olesen signed a "Consignment Agreement" with Amoskeag Auction Company, Inc., to sell 1,580 firearms in the inventory; and (3) on March 13, 2003, Brian Olesen signed a Notice of Abandonment of Property of approximately 200 pounds of smokeless powder. See Ex. C, ¶ 18.

Barbara Olsen (in her own name) was timely approved (<u>see</u> Ex. B, ¶ 7; and (5) knew, or should have known that ATF was conducting a criminal investigation for violation of federal firearms laws as early as January, 2003, as evidenced by the execution of search warrants at B&J Shooting Supply on January 8 and January 31, 2003. <u>See</u> Ex. C, ¶¶ 15,16.[5]

For purposes of accrual, "the "crucial time . . . is when the plaintiff becomes aware that he is suffering from a wrong for which damages may be recovered in a civil action." <u>Singleton v. City of New York</u>, 632 F.2d 185, 192 (2d Cir. 1980). The fact that additional alleged injuries occurred within the limitations period did not toll the running of the statute. The allegation of a "continuing campaign of malice and retaliation" that has continued to the present (<u>see</u> <u>e.g.,</u> Ex. A, ¶ 16) "does not postpone the accrual of causes of action arising out of [ ] separate wrongs." <u>Id</u>.

Accordingly, the actions which form the basis of plaintiffs' allegations for retaliation in violation of their First Amendment rights occurred more than three years prior to plaintiffs' initial

---

[5]Plaintiffs allege Morgan initiated a "frivolous criminal investigation" of Brian Olesen in the "winter and spring 2003." Ex. A, ¶ 19. This investigation of Brian Olesen and Frampton began in November 2002 and concluded in February 2003. Ex. C, ¶¶ 6, 17.

Complaint being filed on August 8, 2006, and plaintiffs' First Amendment claims should be dismissed.[6]

## POINT II

### ASSI Does Not Have Standing to Bring an Equal Protection Claim

Plaintiffs allege that ASSI is a corporation doing business as B&J Guns, is owned by Barbara Jean Olesen, and that Brian Olesen is an employee. Ex. A, ¶¶ 5-7. However, ASSI was not licensed as a FFL, nor did ASSI apply for a FFL, until well after the commencement of this litigation, on June 17, 2009. Ex. B, ¶ 11. It would have been unlawful for ASSI to conduct business in the purchase, sale or transfer of firearms without a license, i.e., prior to June 2009. See United States v. Collins, 957 F.2d 72, 74 (2d Cir. 1992) and 18 U.S.C. § 922(a)(1)(A). Accordingly, ASSI cannot show an "injury in fact" or an injury traceable to defendant's conduct, and therefore, cannot satisfy Article III's standing requirements to bring an action for equal protection based on the allegations in the Amended Complaint. See Wong v. Doar, 571 F.3d 247, 255, n. 10 (2d Cir. 2009), quoting Friends of the Earth v. Laidlaw, 528 U.S. 167, 180-81, 120 S. Ct. 693 (2000); see also Pacific Capital Bank, N.A. v. Connecticut, 542 F.3d 341, 350 (2d Cir. 2008).

---

[6]On December 8, 2008, the Court dismissed with prejudice ASSI's First Amendment claim. Ex. D, at *3. On July 8, 2009, the Court again dismissed any First Amendment claim alleged by ASSI in the Amended Complaint. Ex. J, at *2.

## POINT III

## Morgan is Protected by Qualified Immunity

It is well settled that the defense of qualified immunity is available to Federal officials who are sued in <u>Bivens</u>-type actions. <u>Siegert v. Gilley</u>, 500 U.S. 226, 111 S. Ct. 1789 (1991); <u>Butz v. Economou</u>, 438 U.S. 478, 506-508 (1978).[7] To succeed on a claim of qualified immunity, the defendant "must show that no reasonable jury, viewing the evidence in the light most favorable to the Plaintiff, could conclude that the defendant's actions were objectively unreasonable in light of clearly established law." <u>Ford v. Moore</u>, 237 F.3d 156, 162 (2d Cir. 2001)[8].

---

[7]The purpose of qualified immunity is to allow officials to carry out their duties without "fear of personal monetary liability and harassing litigation." <u>Zieper v. Metzinger</u>, 474 F.3d 60, 71 (2d Cir. 2007), <u>citing</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 638, 641(1987).

> Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) (emphasis deleted). Indeed, we have made clear that the "driving force" behind creation of the qualified immunity doctrine was a desire to ensure that "'insubstantial claims' against government officials [will] be resolved prior to discovery." <u>Anderson v. Creighton</u>, 483 U.S. 635, 640, n. 2, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). Accordingly, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." <u>Hunter v. Bryant</u>, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991) (per curiam).

<u>Pearson v. Callahan</u>, 129 S. Ct. 808, 816 (2009). <u>See also</u> <u>Jenkins v. City of New York</u>, 478 F.3d 76, 87 (2d Cir. 2007). Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" <u>Zieper</u>, 474 F.3d at 71, <u>quoting</u> <u>Hunter</u>, 502 U.S. at 229 (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)).

[8]"In assessing an officer's eligibility for the shield, 'the appropriate question is the objective inquiry whether a reasonable officer could have believed that [his actions were] lawful, in light of clearly established law and the information the officer[] possessed.'" <u>Kelsey v. County of Schoharie</u>, 567 F.3d 54, 61 (2d Cir. 2009), <u>quoting</u> <u>Wilson v. Layne</u>, 526 U.S. 603, 615 (1999). A defendant's "actions are objectively reasonable if 'officers of reasonable competence could disagree on the legality of the defendants' actions.'" <u>Ford</u>, 237 F.3d at 162, <u>quoting</u> <u>Salim v. Proulx</u>, 93 F.3d 86, 91 (2d Cir. 1996) (internal citations omitted).

In order to determine whether qualified immunity attaches, the Supreme Court has set out a two-part inquiry. The initial inquiry must be whether the officer's conduct violated a constitutional right. <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001); <u>see also</u> <u>Kelsey</u>, 567 F.3d at 61. If no constitutional right was violated, then "the court need not further pursue the qualified immunity inquiry, 'and the officer is entitled to summary judgment.'" <u>Kelsey</u>, 567 F.3d at 62, <u>quoting</u> <u>Gilles v. Repicky</u>, 511 F.3d 239, 244 (2d Cir. 2007). However, "if a violation could be made out on a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established."[9] <u>Higazy v. Templeton</u>, 505 F.3d 161, 170 (2d Cir. 2007), <u>quoting</u> <u>Saucier</u>, 533 U.S. at 201.

To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an

---

[9]The Supreme Court's recent decision in <u>Pearson v. Callahan</u>, ___ U.S. ___, 129 S.Ct. 808 (2009), has altered the qualified immunity analysis somewhat by revisiting the sequence of the two-part inquiry set forth in <u>Saucier</u>. In <u>Pearson</u>, the Supreme Court wrote:

> On reconsidering the procedure required in <u>Saucier</u>, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

<u>Pearson</u>, 129 S. Ct. at 818; <u>see also</u> <u>Kelsey</u>, 567 F.3d at 61 ("we are no longer required to make a 'threshold inquiry' as to the violation of a constitutional right in a qualified immunity context, but we are free to do so."). In granting courts greater discretion to conduct the qualified immunity analysis, <u>Pearson</u> also noted that "the Court continues to recognize that the <u>Saucier</u> protocol is often beneficial." <u>Pearson</u>, 129 S. Ct. at 818.

official action is protected by qualified immunity unless the very action in question has previously been held unlawful, . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987), citing Mitchell v. Forsyth, 472 U.S. 511, 535, n. 12 (1985); see also, Hope v. Pelzer, 536 U.S. 730, 741, 122 S. Ct. 2508, 2516 (2002) ("the salient question . . . is whether the state of the law . . . gave [the officers] fair warning that their alleged treatment of [the plaintiff] was unconstitutional."); Higazy, 505 F.3d at 170; Zieper, 474 F.3d at 67. "To overcome a defense of qualified immunity, the constitutional protection must have been clearly established under Supreme Court or Second Circuit law at the alleged time of injury." Timmins v. Toto, 91 Fed. Appx. 165, 167 (2d Cir. 2004), citing African Trade & Information Center, Inc. v. Abromaitis, 294 F.3d 355, 360 (2d Cir. 2002).[10]

    As discussed more fully below, the actions of Morgan were lawful and reasonable and did not violate Plaintiffs' constitutional rights. However, even if the Court should determine such rights

---

[10]    Three factors are considered in evaluating whether a right was clearly established at the time a § 1983 defendant acted: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." Shechter v. Comptroller of City of New York, 79 F.3d 265, 271 (2d Cir. 1996) (citing Francis v. Coughlin, 891 F.2d 43, 46 (2d Cir. 1989)).

African Trade & Info. Ctr., Inc. v. Abromaitis, 294 F.3d 355, 360 (2d Cir. 2002).

were violated, Morgan is still entitled to qualified immunity since
it was not apparent at the time, in light of pre-existing law and in
light of the specific context of this case, that his actions would
be unlawful.  <u>Anderson</u>, 483 U.S. at 640; <u>Zieper</u>, 474 F.3d at 68
("determination must 'be undertaken in light of the specific context
of the case, not as a broad general proposition.' <u>Saucier</u>, 533 U.S.
at 201.")

**POINT IV**

**<u>Morgan Did Not Violate Plaintiffs' First Amendment Rights.</u>**

Plaintiffs allege that Morgan violated their First Amendment
rights by retaliating against them because of "Brian Olesen
reporting firearms violations against his former partner, James
Frampton, and for plaintiff's questioning and/or protesting
defendant John Morgan's actions in the investigation of Frampton and
others." Ex. A, ¶ 51.  Plaintiffs allege that as a result, Morgan
"conduct[ed] unlawful investigations, making Brian Olesen a 'target'
of such investigations, interfering with plaintiffs' business
relationships, [and] preventing plaintiffs from obtaining federal
firearms licenses in due course . . ." Ex. A, ¶ 53.  However, under
<u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), such
conclusory allegations and labels are insufficient to defeat a
motion to dismiss.  While plaintiffs allege Brian Olesen reported
the unlawful activities of his business partner, plaintiffs have yet
to describe what the unlawful activities were that were reported.

10

While plaintiffs allege Brian Olesen questioned and/or protested Morgan's actions in the investigation of Frampton, plaintiffs have yet to indicate what their objections were with ATF's investigation and whether Morgan was even aware of such objections. Moreover, as noted by this Court,

> To establish a prima facie case of First Amendment retaliation, a plaintiff must establish "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action."

Ex. D, <u>Olesen v. Morgan</u>, 2008 WL 5157459 (N.D.N.Y Dec. 8, 2008), <u>quoting</u> <u>Scott v. Coughlin</u>, 344 F.3d 282, 287 (2d Cir. 2003) (quotation omitted).  Further, plaintiffs fail to show they were engaged in constitutionally protected speech, that Morgan's actions were in any way retaliatory, or that there was any causal connection between plaintiffs' alleged speech and Morgan's alleged adverse conduct.


**1.  Plaintiffs Have Failed to Establish That Their "Speech" is Protected by the First Amendment.**

Plaintiffs have failed to establish that (1) the "complaints against Frampton,"and (2) Brian Olesen's "questioning and/or protesting" ATF's investigation of Frampton were protected speech. Ex. A, ¶¶ 12, 13, 51.


Plaintiffs admit that Brian Olesen and Frampton were business partners at the time the complaints were made and were doing

business as "B&J Guns, Inc.," and that Frampton was the sole holder of the federal firearms license. Ex. A, ¶ 11.  Significantly, Plaintiffs also admit that Frampton's illegal conduct was "affecting the business of B&J Guns, Inc." Ex. A, ¶ 14.  Accordingly, Brian Olesen's "speech" was that of an employee or partner of a FFL, a licensee which Olesen admits was involved in unlawful activity. Moreover, Olesen admits he was doing business as a firearms dealer and yet he was not licensed himself.  Ex. A, ¶ 11.[11]

First, plaintiffs cannot base a First Amendment claim of retaliation that they or their business, B&J Guns, were subject to a criminal investigation, when they were the very source of the criminal allegations.  In deciding a similar issue concerning registering with the Selective Service, the Supreme Court held:

> We think it important to note as a final matter how far the implications of petitioner's First Amendment argument would extend. Strictly speaking, his argument does not concern passive enforcement but self-reporting. The concerns he identifies would apply to all nonregistrants who report themselves even if the Selective Service engaged only in active enforcement. For example, a nonregistrant who wrote a letter informing Selective Service of his failure to register could, when prosecuted under an active system, claim that the Selective Service was prosecuting him only because of his "protest." Just as in this case, he could have some justification for believing that his letter had focused inquiry upon him. Prosecution in either context would equally "burden" his exercise of First Amendment rights. Under the petitioner's view, then, the Government could not constitutionally

---

[11]"[T]he GCA requires every person who engages in business as an importer, manufacturer, or dealer in firearms or ammunition to be properly licensed by the Secretary of Treasury." Trader Vic's Ltd v. O'Neill, 169 F. Supp. 2d 957, 962 (N.D. Ind. 2001), citing 18 U.S.C. § 923.

prosecute a self-reporter -- even in an active enforcement system -- unless perhaps it could prove that it would have prosecuted him without his letter. <u>On principle, such a view would allow any criminal to obtain immunity from prosecution simply by reporting himself and claiming that he did so in order to "protest" the law. The First Amendment confers no such immunity from prosecution</u>.

<u>Wayte v. United States</u>, 470 U.S. 598, 613-614 (1985) (emphasis added).  <u>See also</u>, <u>United States v. Bryser</u>, 95 F.3d 182, 187 (2d Cir. 1996) ("Ancillary "losses" of constitutional rights may often attend the commission of criminal acts.   The admission of incriminating statements by a city-park soapbox orator as evidence of criminal acts by the speaker is not regarded by sensible people as illegitimately chilling the exercise of First Amendment rights.").  Accordingly, plaintiffs admit that they provided what could be considered incriminating activity concerning themselves, their business, and their business relations, and yet complain now that the government became concerned about their possible involvement in the unlawful activity.  As noted by the Courts, the First Amendment does not require the government to turn a blind eye.

Second, Brian Olesen's "speech" was not that of a concerned citizen but that of an employee or partner of a FFL and, therefore, his speech was not protected under the First Amendment.  Relevant is the case of <u>Coward v. Gilroy</u>, 2007 WL 1220578 (N.D.N.Y Apr. 24, 2007), <u>aff'd</u>, 306 Fed. Appx. 647, 649 (2d Cir. 2009).  Like the Olesens, the Cowards were involved in a business (home care)

licensed and regulated by the government.  The Court determined the Cowards could be categorized as "public employees" or "government contractors," and therefore controlled by the Supreme Court decision in Bd. of County Comm. v. Umbehr, 518 U.S. 668, 677-79 (1996).[12] However, the Court further held that even assuming the licensees were not government employees, but speaking as private citizens, they were nevertheless still required to show they were speaking "on a matter of public concern." Coward, 2007 WL 1220578 at *4, quoting Skehan v. Village of Mamaroneck, 465 F.3d 96, 106 (2006). Similarly, in Hickey-McAllister v. British Airways, 978 F. Supp. 133, 135 (E.D.N.Y. 1997), the district court determined that an employee of British Airways who had her security credentials revoked by United States Customs, was required to show that her speech was of public concern in order to succeed on her First Amendment claims.[13]  The Court held that "[i]n such cases, the appropriate constitutional analysis is the analysis governing the speech rights of government employees." Id. "Under that analysis, plaintiff must show, 'as an initial matter, that [her] speech may be fairly characterized as constituting speech on a matter of public

---

[12] See also Ansell v. D'Alesio, 485 F. Supp. 2d 80, 85 (D. Conn. 2007) ("for purposes of retaliation claims brought under the First Amendment, there is no legal distinction between independent contractors with pre-existing contracts . . . and full-time employees.").

[13] "In considering whether plaintiff's complaints about Anton constitute protected speech under the First Amendment, it is significant that the injury plaintiff ultimately complains of is the withdrawal, 'based on . . . Anton's false allegations,' of her hologram and her access to security areas, for where a public authority has withdrawn a license, contract, or privileges in retaliation for the exercise of speech by the licensee or recipient, a First Amendment claim may be stated." Hickey-McAllister, 978 F. Supp. at 137, citing Umbehr, 518 U.S. 668 (1996).

concern.'" <u>Hickey-McAllister</u>, 978 F. Supp. at 137, <u>quoting</u>  <u>White</u> <u>Plains Towing Corp. v. Patterson</u>, 991 F.2d 1049, 1058 (2nd Cir. 1993).  Accordingly, whether plaintiffs are categorized as private citizens, or contractors or regulated licensees, plaintiffs must show that Brian Olesen's allegation were made on a matter of public concern.  Plaintiffs have failed to do so.

The Second Circuit has held that "[w]hether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." <u>Lewis v. Cowen</u>, 165 F.3d 154, 164 (2d Cir. 1999), <u>citing</u>  <u>Connick v.</u> <u>Myers</u>, 461 U.S. 138, 147-148 (1983).  <u>See also</u> <u>Piscottano v. Murphy</u>, 511 F.3d 247, 270 (2d Cir. 2007) ("public concern is something that is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication.").  "In reaching this decision, the court should focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." <u>Lewis</u>, 165 F.3d at 163-164.  <u>See</u> <u>also</u> <u>Coward v. Gilroy</u>, 306 Fed. Appx. 647, 649 (2d Cir. 2009); <u>see</u> <u>also</u>  <u>Ruotolo v. City of New York</u>, 514 F.3d 184, 189 (2d Cir. 2008); <u>Coward</u>, 306 Fed. Appx. at 649.  As noted above, Mr. Olesen spoke solely in his capacity as an employee/partner of a firearms

business, and as the Amended Complaint bears out, he complained about Frampton only because it was hurting the business.   Ex. A, ¶ 14, see also Ex. C, ¶¶ 4, 5, 10, 12.

Moreover, it has been held that reporting a possible criminal violation does not alone establish the required public purpose.   In Rockland Vending Corp. v. Creen, 2009 WL 2407658 (S.D.N.Y. Aug. 4, 2009), the plaintiff contractor alleged the defendants retaliated for requesting "assistance from the New York State police and its exercise of the right to petition the government to investigate its grievances." Id. at *10.   There, the court held that "Rockland's complaints to law enforcement officials . . . were essentially complaints about a civil contract dispute between Rockland and DOCS -- notwithstanding Plaintiffs' various hyperbolic allegations of criminal conduct.   There is no evidence in the record that Rockland ever alleged that DOCS was pursuing an unfair policy or regularly engaged in illegal practices that affected anyone other than Rockland." Id. at *12. (Emphasis added).   See also Cahill v. O'Donnell, 75 F. Supp. 2d 264, 273 (S.D.N.Y. 1999) ("statements made . . . occurred in the ordinary course of plaintiffs' work as members of Internal Affairs.   While this fact does not preclude a determination that their speech implicated matters of social or public significance, the fact that the speech arose during the usual performance of their duties [as Internal Affairs officers] weighs

strongly against a characterization of the speech as relating to a matter of public concern.").[14]    Here, it is clear that Olesens' alleged "speech" was made in the course of his business dealing in firearms, was essentially personal in nature to advance his business interests, and was made to redress his personal grievances against his partner, rather than for a broader public purpose.  Accordingly, plaintiffs have failed to show that Olesen's complaints about Frampton and his complaints about ATF's investigation of Frampton was "speech" for purposes of protection under the First Amendment.

### 2.    Plaintiffs have failed to establish that Morgan took adverse action against them.

Plaintiffs allege "the defendant took adverse action against the plaintiffs . . .by conducting unlawful investigations, making Brian Olesen a "target" of such investigations, interfering with plaintiffs' business relationships, [and] preventing plaintiffs from obtaining federal firearms licenses in due course . . ." Ex. A,

---

[14]    Moreover, "'even as to an issue that could arguably be viewed as a matter of public concern, if the employee has raised the issue solely in order to further his own employment interest, his First Amendment right to comment on that issue is entitled to little weight.'" Cahill v. O'Donnell, 75 F. Supp. 2d at 273 (quoting White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1058 (2d Cir.), cert. denied, 510 U.S. 865, 114 S. Ct. 185, 126 L. Ed. 2d 144 (1993)); see also Blum v. Schlegel, 18 F.3d 1005, 1012 (2d Cir. 1994) ("It is true that the fact that an employee's speech touches on matters of public concern will not render that speech protected where the employee's motive for the speech is private and personal."). "'A communication by an employee to an employer in the course of the employee's normal duties, in routine form, and containing standard contents, is not likely to address a matter of public concern.'" Cahill v. O'Donnell, 75 F. Supp. 2d at 273.

Nonnenmann v. City of New York, 2004 WL 1119648 at *14 (S.D.N.Y. May 20, 2004)

¶ 53. As noted above, most, if not all, of these claims are barred by the New York's three-year statute of limitations. Nevertheless, there is no basis to plaintiffs' allegations.

With respect to the initial investigation of Olesen and Frampton, ATF agents had probable cause to believe B&J Shooting Supply was involved in a number of federal firearms violations. ATF's evidence included not only information furnished by Brian Olesen, but also information from Mr. Frampton and a confidential informant, the results of a physical inventory of B&J's inventory, and a review of their firearms records. See Ex. C, ¶¶ 4-6, 10, 11, 14. The investigation resulted in the issuance of two federal search warrants. See Ex. C, ¶¶ 15, 16. A search warrant issued by a neutral and detached magistrate is usually given substantial deference, and doubts are resolved in favor of validating the warrant. See United States v. Travisano, 724 F.2d 341, 345 (2d Cir. 1983). Plaintiffs do not even allege these warrants lacked validity.[15]

As to the second investigation of Olesen, and any delay in issuing Olesen his own license, ATF agents had probable cause to

_____

[15]The standard for determining whether a search warrant is supported by probable cause is whether, "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "Probable cause is a flexible, common-sense standard." Texas v. Brown, 460 U.S. 730, 742 (1983). Probable cause determinations "do[ ] not deal with hard certainties, but with probabilities." Gates, 462 U.S. at 231-32.

believe that he had established a hidden ownership under a federal firearms license issued to Barbara Olesen.  This determination was based upon the following: (1) the fact that Barbara Olesen applied for a federal firearms license only one month after Olesen withdrew his own application, (2) evidence of subpoenaed records showing that Brian Olesen was operating the business, and (3) surveillance of Olesen at the business premises.[16]  See Ex. C, ¶¶ 22, 24.

Though plaintiffs allege that the issuance of their federal firearms licenses was adversely impacted, such allegations fail on the facts.  As noted above, Brian Olesen applied for a license in December 2002, and voluntarily withdrew such application, on or about April 2003, because, as stated by Mr. Olesen, his landlord would not allow a continuance of the lease at 1814 Central Avenue See Ex. B, ¶ 5.  As to Barbara Olesen's application, it was originally submitted by her as President of Guns, Inc.  During ATF's application inspection on July 23, 2003, she changed the application to a sole proprietor, and she was licensed as an FFL on August 29, 2003.  See Ex. B, ¶ 7.  Accordingly, Barbara Olesen was licensed well within the 60 days provided for pursuant to 18 U.S.C. § 923(d)(2).  Moreover, as noted by this Court, the law specifically

---

[16] See United States v. Laufer, 245 F. Supp. 2d 503, 511 (W.D.N.Y. 2003) (concluding that subpoenaed business records from an internet service provider, Paycom, and a telephone company were sufficient to corroborate the existence of criminal activity); United States v. Gallo, 863 F.2d 185, 192 (2d Cir. 1988) (concluding that "probable cause was 'freshened' by visual surveillance of [a suspect's] home which revealed frequent new visits by [the suspect's] alleged criminal associates).

provides that the remedy for failure to timely act on an application is to bring an action under 28 U.S.C. § 1361.   Ex. J, at *5. Accordingly, if plaintiffs had an action for failure to timely act on an application, he/she failed to exhaust the remedy.

Plaintiffs have failed to show that Morgan took any adverse action against them in response to any First Amendment speech, and their First amendment claim should be dismissed.

### 3.  Plaintiffs Have Failed to Establish a Causal Connection Between the Protected Speech and the Adverse Action.

Plaintiffs allege the protected speech took place in "late 2002, early 2003." Ex. A, ¶ 12.   However, plaintiffs' alleged adverse actions include interfering with the business of B&J Guns, Inc. in 2004[17], interfering with the issuance of a Brian Olesen's federal firearms license in 2005, and continues with frivolous criminal investigations to "the present date." Ex. A, ¶¶ 23, 32, 37, 38.   However, this gap of several years between the alleged "speech" and the alleged retaliatory conduct, not only stretches, but goes beyond the limits of plausible causation.   See e.g., Economic Opportunity Comm'n of Nassau County, Inc. v. County of Nassau, 106 F. Supp. 2d 433, 438 (E.D.N.Y. 2000) ("Circumstantial evidence of retaliation may be found when defendants are aware that

---

[17]   To be noted, ATF has no record of "B&J Guns, Inc." ever applying for or holding a FFL.  Ex. B, ¶ 12.

plaintiff has engaged in protected speech and defendants' challenged behavior <u>closely follows</u> that protected speech.") (emphasis added), <u>citing</u> <u>McCullough v. Wyandanch Union Free School Dist</u>., 187 F.3d 272, 280 (2d Cir. 1999).

>While the Second Circuit has articulated no "bright line" rule of when an allegedly retaliatory action occurs too far in time from the exercise of a federal right to be considered causally connected, <u>Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.</u>, 252 F.3d 545, 554 (2d Cir. 2001), it is well settled that there when "mere temporal proximity" is offered to demonstrate causation the protected activity and the adverse action must occur "very close" together. <u>Clark Cty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (internal quotation omitted). Time periods greater than one year are generally conclusive that a causal nexus has not been established. See, e.g., <u>Deravin v. Kerik</u>, 2007 WL 1029895, at *11 (S.D.N.Y. Apr. 2, 2007); <u>Zenni v. Hard Rock Café Int'l. Inc</u>.(N.Y.). 903 F. Supp. 644, 656 (S.D.N.Y. 1995). Further, time periods as short as three months have been found to be too long to give rise to an inference that the subsequent action was retaliatory. <u>Breeden</u>, 532 U.S. at 273-74 (citing <u>Richmond v. ONEOK. Inc.</u>, 120 F.3d 205, 209(10th Cir. 1997)); see also <u>Hollander v. Am. Cyanamid Co.</u>, 895 F.2d 80, 85-86 (2d Cir. 1990). One court in this Circuit has observed that "two months between the protected activity and the adverse employment action seems to be the dividing line."<u>Wright v. N.Y. City Off Track Betting Corp.</u>, 2008 WL 762196, at *5 (S.D.N.Y. Mar. 24, 2008).

<u>Hargett v. N.Y. City Transit Auth.</u>, __ F.Supp.2d __, 2009 WL 2391577 (S.D.N.Y. Aug. 4, 2009)(no causal connection where retaliation occurred 8-13 months after the claimed protected activity). Here, plaintiffs have failed to show any plausible connection between their "speech" and the alleged activities which plaintiffs have

admitted or must concede took place several months or several years after the alleged speech took place.[18]

Moreover, plaintiffs make only conclusory allegation that they believe Morgan's actions and ATF's investigations were in retaliation for exercising their First Amendment rights, and have failed to meet their burden in showing that it was the motivating factor behind these actions.  See Scott v. Coughlin, 344 F.3d 282, 287-288 (2d Cir. 2003) ("Plaintiff has the initial burden of showing that an improper motive played a substantial part in defendant's action.");  Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008) (plaintiff has . . . burden of establishing that his protected conduct was a motivating factor behind any harm).  Moreover, had the reporting by Olesen been a motivating factor, the facts overwhelmingly show that Morgan's primary purpose, if not the sole purpose, was the investigation of violations of federal firearms laws. "Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the

---

[18]As to the "alleged retaliatory actions" that took place closer in time and place to the "alleged speech," plaintiffs have failed to provide any foundation for their claims.  As noted above, Brian Olesen voluntarily withdrew his application on or about April 2003 because he could not get business premises, and he did not reapply for another FFL until February 2005.  As to Barbara Olesen's license, she did not apply for a license in her own name until July 2003, and she was licensed the following month.  ASSI did not apply for a federal firearms license until 2009.  Ex. B, ¶¶ 5, 7, 11.

alleged retaliatory action would have occurred." <u>Scott</u>, 344 F.3d at 288, <u>citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287 (1977). <u>See also Smith,</u> 532 F.3d at 1278; <u>Spang v. Katonah-Lewisboro Union Free Sch. Dist.</u>, 626 F. Supp. 2d 389 (S.D.N.Y. 2009) ("the defendants can defeat a retaliation claim by showing that they would have taken the same action absent the improper motive."). Accordingly, plaintiffs have failed to show that the primary motive for Morgan's actions was in response to plaintiffs' First Amendment activity.

Morever, because Morgan/ATF had probable cause to investigate Olesen and execute two search warrants, an inquiry into the underlying motive for the investigation  need not be undertaken. <u>See Singer v. Fulton County Sheriff</u>, 63 F.3d 110, 120 (2d Cir. 1995)("if the officer either had probable cause or was qualifiedly immune from subsequent suit (due to an objectively reasonable belief that he had probable cause), then we will not examine the officer's underlying motive in arresting and charging the plaintiff.")  Were such an inquiry to be made, plaintiffs have proffered no evidence of Morgan's motive beyond the allegation that Morgan may have taken exception to Olesen's complaint about Frampton's illegal activities and Olesen's criticism of the manner ATF was conducting its investigation of Frampton. Ex. A, ¶¶ 15, 16. The fact that any law enforcement officer would take exception to someone reporting a possible criminal violation strays from the "plausible" and does not

allow the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 556, 127 S.Ct. 1955 (2007). The Second Circuit has held that "[s]pecific proof of improper motivation is required in order for plaintiff to survive summary judgment on a First Amendment retaliation claim." <u>Curley v. Village of Suffern</u>, 268 F.3d 65, 73 (2d Cir. 2001), <u>citing</u> <u>Blue v. Koren</u>, 72 F.3d 1075, 1082-83 (2d Cir. 1995). "An individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause that is in reality an unsuccessful attempt to deter or silence criticism of the government." <u>Mozzochi v. Borden</u>, 959 F.2d 1174, 1180 (2d Cir. 1992).

Accordingly, plaintiffs' claims of causation between the alleged speech and the alleged subsequent retaliation is refuted by lack of any reasonable nexus in time, lack of any unlawful motivation, and failure to show plaintiffs were adversely affected in the issuance of their licenses. Moreover, Morgan's investigation of plaintiffs' business activities was motivated by intentions to enforce federal firearms laws and was supported by probable cause. Further, for purposes of arguendo, even if plaintiffs had properly alleged improper motive on behalf of Morgan, they have failed to show that Morgan lacked probable cause and that such actions would

not have been occurred "but for" the alleged improper motive.    As such, Plaintiffs' First Amendment claims should be dismissed.


4.    **The Conduct at Issue Was Not Clearly Established at the Time of the Events in Question.**

Morgan should be granted qualified immunity because it was not clearly established that a reasonable officer in his position would have understood under the circumstances presented that his actions would have been an act of retaliation or in violation of the First Amendment at the time.    While the Supreme Court has held that independent contractors have a First Amendment right against retaliation for protected speech, neither the Supreme Court or the Second Circuit has decided whether applicants for new government contracts or licenses are similarly protected.

> To date, however, the Supreme Court has held that an independent contractor has a First Amendment right against retaliation only where there is a "pre-existing commercial relationship" between the parties. Id. at 685 ("We emphasize the limited nature of our decision today. Because Umbehr's suit concerns the termination of a pre-existing commercial relationship with the government, we need not address the possibility of suits by bidders or applicants for new government contracts who cannot rely on such a relationship.") This court has yet to go beyond Umbehr on this point and we have recently held that, while independent contractors' right against retaliation may in fact extend to situations where there is no pre-existing commercial relationship, such an extension is not yet clearly established and consequently, a defendant against such a claim is entitled to qualified immunity.

Housing Works, Inc. v. Giuliani, 56 Fed. Appx. 530, 532-533 (2d Cir. 2003), quoting Bd. of County Comm'rs v. Umbehr, 518 U.S. 668, 686

(1996), and citing <u>African Trade & Info. Ctr., Inc. v. Abromaitis</u>, 294 F.3d 355 (2d Cir. 2002).

Here, the plaintiffs were applicants for federal firearm licenses, and Brian Olesen was doing business as an unlicensed firearms dealer. Ex. A, ¶¶ 5,6,11. While courts within the Second Circuit have recognized licensees, being analogous to contractors, as having First Amendment protection, they have yet to recognize applicants as having similar rights. See <u>Coward v. Gilroy</u>, 2007 WL 1220578 (N.D.N.Y Apr. 24, 2007), <u>aff'd</u>, 306 Fed. Appx. 647, 649 (2d Cir. 2009); <u>Hickey-McAllister v. British Airways</u>, 978 F. Supp. 133, 135 (E.D.N.Y. 1997). Accordingly, it has not been clearly established by the Supreme Court or the Second Circuit that licensees in general, and FFL, in particular, have a First Amendment right against retaliation for speech.

Furthermore, the Supreme Court and the Second Circuit have ruled on cases brought by contractors, government employees and a number of licensees, as to whether their speech could be categorized as being within the public interest and considered "protected speech", or was part of their required duties as employees/contractors and not so protected. However, it has not been clearly established by the Supreme Court or the Second Circuit that an applicant for an FFL, or an employee of an FFL, or an unlicensed partner of an FFL, who complains about the business

practices of his own business would be considered "speech" under the First Amendment.

Accordingly, since the law on these issues was not clearly established at the time of the events alleged in plaintiffs' Amended Complaint, Morgan should be granted qualified immunity, and plaintiffs' First Amendment claims should be dismissed.

## POINT V

### Morgan Did Not Violate Plaintiffs' Fifth Amendment Right to Equal Protection.

As noted by this Court, Plaintiffs have alleged a class-of-one equal protection claim. Ex. J, Olesen v. Morgan, 2009 WL 2045682 at *7 (N.D.N.Y. July 8, 2009), citing Village of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct. 1073 (2000); DeMuria v. Hawkes, 328 F.3d 704, 706 (2d Cir. 2003). However, "the only remaining alleged basis for Plaintiffs' class-of-one equal protection claim is Defendant's alleged 'malice' and 'personal vendetta' against Defendant Brian Olesen based on the alleged affair." Ex. J, Olesen, 2009 WL 2045682 at *7, citing Ex. A, ¶¶ 17, 82.

To prevail on their equal protection claim, plaintiffs must show they "ha[d] been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Willowbrook v. Olech, 528 U.S. 562, 564

(2000); <u>see also</u>  <u>DeMuria v. Hawkes</u>, 328 F.3d 704, 706 (2d Cir. 2003); <u>African Trade & Info. Ctr., Inc. v. Abromaitis</u>, 294 F.3d 355, 364 (2d Cir. 2002).  As this Court stated, "Plaintiffs will have to show that Defendant's actions had no rational relationship to the legitimate goals of the ATF."  Ex. J, <u>Olesen</u>, 2009 WL 2045682 at *1. However, the underlying facts of this case show that Morgan and ATF had legitimate reasons for investigating plaintiffs.  Moreover, plaintiffs have the burden in showing disparate treatment.

"As to the first criterion, courts consistently have stated that, 'to be considered similarly situated, employees must be similarly situated in all material respects.'" <u>Inturri v. City of Hartford</u>, 365 F. Supp. 2d 240, 252 (D. Conn. 2005), <u>quoting</u> <u>Tuskowski v. Griffin</u>, 359 F.Supp 2d 225 (D. Conn. 2005)(citing cases).  "[A]n equal protection claim requires (inter alia) evidence from which a jury could find that the plaintiff was selectively treated as 'compared with others similarly situated.'" <u>Beechwood Restorative Care Ctr. v. Leeds</u>, 436 F.3d 147, 155 (2d Cir. 2006), <u>citing Lisa's Party City, Inc. v. Town of Henrietta</u>, 185 F.3d 12, 16 (2d Cir. 1999) and <u>LaTrieste Restaurant and Cabaret, Inc. v. Village of Port Chester</u>, 40 F.3d 587, 590 (2d Cir. 1994).  Accordingly, plaintiffs must show ATF has failed to investigate other federal firearms applicants and licensees where violations of federal firearms laws have been alleged.  Plaintiffs have failed to do so.

As set forth in the attached declarations, ATF was investigating the plaintiffs to ensure compliance with federal firearms laws. <u>See</u> Ex. C, ¶¶ 10, 11, 15, 17, 22. Clearly, plaintiffs were not singled out because of the alleged animosity due to allegations of a possible affair Brian Olesen may have been having, but rather ATF was investigating the applicants and businesses for compliance with the federal firearms laws.[19] Here, plaintiffs "have failed to produce evidence of any "similarly situated" individual or institution treated more favorably. <u>Beechwood Restorative Care Ctr. v. Leeds</u>, 436 F.3d at 155. Moreover, "[m]ere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment." <u>Beechwood Restorative Care Ctr.</u>, 436 F.3d at 155, <u>quoting Cifarelli v. Village of Babylon</u>, 93 F.3d 47, 51 (2d Cir. 1996). Accordingly, there is no basis for plaintiffs' claim of equal protection under the Fifth Amendment, Morgan should be granted qualified immunity, and plaintiffs' Fifth Amendment equal protection claim should be dismissed.

---

[19]To be noted, hearsay evidence "is not sufficient to create a triable issue of fact on summary judgment." <u>Demuria v. Marshall</u>, 2004 WL 2216524 (D. Conn. Sept. 24, 2004), <u>citing</u> <u>ABB Indus. Sys., Inc. v. Prime Tech., Inc.</u>, 120 F.3d 351, 357 (2d Cir. 1997).

## IV. <u>CONCLUSION</u>

For the forgoing reasons, plaintiffs' Amended Complaint should be dismissed pursuant to Fed.R.Civ.P. Rules 12(b)(1) and 12(b)(6) or, in the alternative, pursuant to Fed.R.Civ.P. Rule 56(b).

DATED:    Buffalo, New York, September 21, 2009.

Respectfully Submitted,

KATHLEEN M. MEHLTRETTER
United States Attorney


S/Mary E. Fleming
By:  MARY E. FLEMING
Special Assistant U.S. Attorney
U.S. Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
Bar Roll No. 514110

IN THE UNITED STATES DISTRICT COURT
<u>FOR THE NORTHERN DISTRICT OF NEW YORK</u>

LOUIS BRIAN OLESEN, II,
BARBARA OLESEN,
AMERICAN SHOOTERS SUPPLY, INC.,

                Plaintiffs,

    v.

JOHN MORGAN, Special Agent of
the Federal Bureau of Alcohol,
Tobacco and Firearms,

                Defendant.

06-CV-0959FJS/DRH

---

<u>**CERTIFICATE OF SERVICE**</u>

    I hereby certify that on September 21, 2009, I electronically filed the foregoing **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT, OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT,** with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participants on this case:

1.   April M. Wilson, Esq.


                  <u> S/Diane E. Carlsen      </u>
                  DIANE E. CARLSEN
                  Legal Assistant