Westlaw.

Not Reported in F.Supp.2d, 2007 WL 1029895 (S.D.N.Y.)
(Cite as: 2007 WL 1029895 (S.D.N.Y.))

Page 1

**H**
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Eric H. DERAVIN, III, Plaintiff,
v.
Commissioner Bernard KERIK and New York City
Department of Corrections, Defendants.
**No. 00 CV 7487(KMW)(KNF).**

April 2, 2007.

*MEMORANDUM OPINION AND ORDER*

KIMBA M. WOOD, U.S.D.J.

**\*1** Plaintiff brings this action against Defendants pursuant to Title VII, 42 U.S.C. §§ 2000e, et seq., alleging claims of race-based discrimination and retaliation. Defendants have moved for summary judgment. On February 28, 2006, Magistrate Judge Kevin N. Fox issued a Report and Recommendation (the "Report"), recommending that Defendants' motion for summary judgment be denied as it relates to Plaintiff's allegation of race-based discrimination in connection with the January 2000 promotions to Deputy Warden of two individuals, Gregory Smith and Thomas Tsotsoros, and granted in all other respects. Plaintiff has filed objections to the Report ("Pl.Objections"). Defendants have filed a response to Plaintiff's objections ("Def.Resp.Objections"), urging the Court to adopt the Report in its entirety. For the reasons stated below, the Court adopts the Report.

**I. Background**[FN1]

> FN1. Magistrate Judge Fox has set forth a detailed background of this case in his Report, familiarity with which is assumed. The Court will restate the most relevant facts. All exhibits attached to the Declara-

tion of Diana Goell Voigt in Support of Defendants' Motion for Summary Judgment are referred to herein as "Def. Ex. [X] ." All exhibits attached to the Declaration of Gregory S. Lisi in Opposition to Defendants' Motion for Summary Judgment are referred to herein as "Pl.Ex. [X]." When the same document is included as an exhibit by both Plaintiff and Defendant, only one of those exhibits is cited.

Plaintiff, Eric H. Deravin III ("Plaintiff"), who is African-American, brings this action against defendants Bernard Kerik ("Kerik") and the New York City Department of Corrections (the "DOC") (collectively "Defendants") pursuant to Title VII, 42 U.S.C. §§ 2000e, et seq. He alleges that Defendants' failure to promote him to the position of Deputy Warden on six occasions from January 1998 through April 2000 was the result of unlawful race-based discrimination and retaliation for his successful defense of a sexual harassment complaint filed by Jeanette Pinero ("Pinero"), a DOC correction officer whom Plaintiff occasionally directly supervised and whom he had previously disciplined. Pinero and Kerik dated from approximately the fall of 1995 through late 1996 or early 1997.[FN2]

> FN2. Plaintiff claims, based on some unidentified sources and a newspaper article, that Kerik and Pinero dated through 2001. Kerik and Pinero both testified, however, that their romantic relationship ended in late 1996 or January 1997. Kerik added that he and Pinero remained friends, and that he continued to see her socially-including for lunch or dinner-until about the end of December 2001.

Plaintiff began working as a correction officer with the DOC in 1980. In September 1989, he passed a civil service exam and received a promotion to Captain. Kerik became the First Deputy Commis-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1029895 (S.D.N.Y.)
**(Cite as: 2007 WL 1029895 (S.D.N.Y.))**

sioner of DOC in January 1995 and DOC Commissioner in January 1998. In August 2000, Kerik resigned and became the Commissioner of the New York City Police Department.

Plaintiff first applied for a promotion to the rank of Assistant Deputy Warden in 1996. On July 30, 1996, Plaintiff's supervisor sent a memorandum to the Director of Personnel advising him that several complaints had been filed with the DOC's Office of Equal Employment Opportunity (the "EEO") against Plaintiff and that Plaintiff was required to appear for a hearing in a case before the New York State Division of Human Rights (the "SDHR"). The supervisor stated that the outcome of the SDHR hearing and the EEO complaints should be taken into account when evaluating Plaintiff's promotion to Assistant Deputy Warden. Captain Peter Meringolo ("Meringolo"), the president of the Correction Captains Association, testified that he discussed Plaintiff with Kerik for the first time at a meeting in 1996. Meringolo testified that, at that meeting, he told Kerik a pending EEO charge against Plaintiff prevented his promotion but that Plaintiff was cleared and should be promoted. Kerik told him that he would review Plaintiff's file.

**\*2** Plaintiff claims that Meringolo told him that Kerik had stated to Meringolo that Plaintiff would never receive another promotion because he had defended himself successfully against Pinero's charges. Pl.Ex. A (Pl.'s Aff. ¶¶ 16, 18); Def. Ex. A at 163:11-164:24 (Plaintiff's deposition testimony); Pl. 56.1 Stat. ¶¶ 77-80 and Plaintiff's Counter-Statement of Facts ("Pl. 56.1 Counter-Stat.") ¶¶ 73-74. To support this assertion, Plaintiff provides what he claims is a transcript of the conversation he had with Meringolo, which he allegedly recorded. Pl.Ex. Y.[FN3] Meringolo testified in his deposition, however, that Kerik never said that the Pinero issue would preclude Plaintiff's promotion.[FN4] Def. Ex. J 30:16-19. Plaintiff did not confront Meringolo with the purported audiotape of the conversation Plaintiff claims to have had with Meringolo, or an alleged transcript thereof.

> FN3. Plaintiff attached what he contends is an authentic tape recording to his objections.

> FN4. Plaintiff disputes this fact. *See* Pl. 56.1 Stat. ¶ 78. The substance of his dispute is not as to Meringolo's deposition testimony, *see* Def. Ex. J 30:16-19, but rather as to the alleged conversation between Plaintiff and Meringolo.

Plaintiff was promoted to the position of Assistant Deputy Warden effective August 30, 1996. Plaintiff disputes Defendants' assertion that Kerik recommended Plaintiff for promotion to the rank of Assistant Deputy Warden, and claims that, instead, it was Ronald Galletta, Acting Chief of Department, who approved the promotion. Def. 56.1 Stat. ¶ 14; Pl. 56.1 Stat. ¶ 14; *see also* Pl. Objections 8 n. 3. The evidence cited by Plaintiff suggests that, at most, Galletta recommended him for promotion. This in no way negates the fact that, in order for the Plaintiff to receive the promotion, Kerik, as First Deputy Commissioner, had to approve it.

Plaintiff was eligible to receive a promotion to Deputy Warden in August 1997. From January 1998 through April 2000, Plaintiff applied six times for a promotion to Deputy Warden. He was promoted in April 2000.

Although Plaintiff had excellent academic and military credentials, his record contained a few blemishes: (1) in November 1997, Kerik received an anonymous letter complaining about Plaintiff's unprofessional and disrespectful behavior while he was a tour commander;[FN5] (2) Plaintiff came to his August 1998 interview with Kerik out of uniform (on October 30, 1998, Plaintiff sent Kerik a letter of apology for being out of uniform); (3) on April 30, 1999, Plaintiff was accused of two incidents of use of force against an inmate; no charges were brought regarding those accusations, *see* Pl.Ex. W; Def. Ex. V (D005367), and Plaintiff asserts that the accusations were false, *see* Pl.Ex. A (Pl.Aff.¶ 13); and (4) in December 1999, a female captain who was under

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1029895 (S.D.N.Y.)
(Cite as: 2007 WL 1029895 (S.D.N.Y.))

Plaintiff's supervision filed an internal complaint of sexual harassment against Plaintiff; the EEO investigated the complaint and determined that no evidence supported the charges.

> FN5. Kerik testified that he sent a memorandum to Plaintiff's direct supervisor, informing him of the complaints and suggesting that Plaintiff receive counseling or sensitivity training. Plaintiff testified that his supervisor orally reprimanded him for use of harsh language.

On April 4, 2000, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC"), alleging that he was discriminated against based on national origin-a claim encompassing race-based discrimination, *Deravin*, 335 F.3d at 202-03-and was retaliated against because of his interactions with Pinero. Pl.Ex. GG; Def. Ex. BB.

*3 On May 2, 2000, Plaintiff was promoted to the position of Deputy Warden. On May 17, 2000, an confidential intra-departmental memorandum was sent to Kerik advising him that Plaintiff had filed an EEOC complaint on April 4, 2000. [FN6] Def. Ex. DD. Plaintiff retired on January 1, 2001.

> FN6. Plaintiff contends that Kerik knew about his EEOC complaint before promoting him.

In August 2000, the EEOC issued a Recommendation for Dismissal of Plaintiff's charge. After receiving a right to sue letter from the EEOC, *see* Compl. ¶ 13, Plaintiff commenced this action. Defendants move for summary judgment.

## II. The Legal Standard

Summary judgment is appropriate only when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir.2005). "[S]ubstantive law will identify which facts are material," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a "material fact is 'genuine[ ]' ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir.2003). All ambiguities must be resolved, and all inferences drawn, in favor of the nonmoving party. *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91 (2d Cir.2001). But "[a] non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.' " *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir.2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Rather, a non-moving party "must 'set forth specific facts showing that there is a genuine issue for trial,' " *id.* (quoting Fed.R.Civ.P. 56(e)); he or she " 'may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.' " *Id.* (quoting *Golden Pac. Bancorp v. FDIC*, 375 F.3d 196, 200 (2d Cir.2004) (quoting *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir.1998))).

The Report recommends that the Court deny Defendants' Motion for Summary Judgment relating to two promoted individuals [FN7] but grant it in all other respects. Plaintiff has filed objections, and Defendants have responded to those objections. The Court reviews the portions of the Report that have been objected to *de novo. See* Fed.R.Civ.P. 72(b). The Court adopts portions to which no objections have been filed if they are not contrary to law or clearly erroneous. Fed.R.Civ.P. 72(b) advisory committee's note.

> FN7. The Report recommends denying Defendants' motion as it relates to Gregory Smith and Thomas Tsotsoros because Defendants did not provide any evidence con-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1029895 (S.D.N.Y.)
**(Cite as: 2007 WL 1029895 (S.D.N.Y.))**

cerning their promotions to rebut the Plaintiff's *prima facie* case of discrimination. This issue is addressed *infra*.

## III. Analysis

### A. Preliminary Issues

The parties raise three issues that must be addressed before turning to the merits of Plaintiff's claims: (1) whether all claims against Kerik must be dismissed because individual supervisors are not subject to liability under Title VII; (2) whether the Complaint must be dismissed as against the DOC because the DOC lacks the capacity to be sued as a matter of law; and (3) whether the statute of limitations bars some of Plaintiff's claims because he failed to bring them within 300 days of the allegedly wrongful acts.

### 1. Defendants' Claims as to Kerik and the DOC

\*4 The Report concluded that "Kerik cannot be found liable to Deravin for any damages he seeks to recover in this action" and that Plaintiff should have brought his claims against the City of New York, not the DOC. Report 15. The Report construed Defendants' Motion for Summary Judgment to include a motion to amend Defendants' Answer so that it included the defense that Kerik cannot be held liable in this action. The Report also concluded that Plaintiff's Complaint should be constructively amended to add the City of New York as a Defendant.

Plaintiff objects to this portion of the Report on the ground that Defendants should not be allowed "to raise two affirmative defenses into the case at this very late stage." [FN8] Pl. Objections 17. Plaintiff does not dispute that "Kerik cannot be found liable to Deravin for any damages he seeks to recover in this action," Report 15,[FN9] but contends instead that he is prejudiced by the Report's finding that Defendants may amend their answer to add such an affirmative defense. His argument is that, "had such

been plead in the answer, [he] would have amended his complaint, to include New York City Human Rights Law claims and New York State Executive Law claims, which allow liability to be found against individuals ... who actively participated in the unlawful discriminatory/retaliatory acts." He contends that Defendants should either be barred from making this argument at this point, or, if they are allowed to do so, he should be allowed to amend his Complaint to add these state claims. Pl. Objections 17-18. Plaintiff did not make this argument before the Magistrate Judge; he instead argued that "defendants should be prevented from raising such affirmative defenses at this date as such would be highly prejudicial to the Plaintiff." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl.Mem.") 23. Because "[a]n objecting party may not raise new arguments that were not made before the Magistrate Judge," this argument fails. *Robinson v. Keane*, No. 92 Civ. 6090, 1999 WL 459811, \*4, 1999 U .S. Dist. LEXIS 9766, \*11 (S.D.N.Y. June 29, 1999). In any event, Plaintiff is not "prejudiced" here because, "as a matter of law, he cannot obtain the relief he seeks against Kerik." Report 16.

> FN8. Plaintiff's objection is vague; he does not specifically object to the Report's recommendation that his Complaint be constructively amended to add the City of New York as a Defendant. Insofar as the Report's recommendation in this respect is favorable to Plaintiff, it is difficult to see what reasonable basis he could have for objecting to it. Defendants do not object to this portion of the Report. The Court therefore accepts the Report's recommendation that the Complaint be constructively amended to add the City of New York as a defendant.

> FN9. It is well-established that individuals, as supervisory personnel of an employer, are not subject to liability under Title VII.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1029895 (S.D.N.Y.)
**(Cite as: 2007 WL 1029895 (S.D.N.Y.))**

> *See Patterson v. County of Oneida, N.Y.,* 375 F.3d 206, 221 (2d Cir.2004); *Arculeo v. On-Site Sales & Mktg., LLC,* 425 F.3d 193, 196 n. 2 (2d Cir.2005). Thus, the claims against defendant Kerik must be dismissed.

## 2. Statute of Limitations

Plaintiff objects to the Report's conclusion that his Title VII claims pertaining to the time period from January 1998 through June 9, 1999, are time-barred because he failed to bring them within 300 days of the alleged wrongful act. Because failure to promote is not a continuing violation, the Court adopts the Report's conclusion that Plaintiff's claims prior to June 1999 are time-barred.

"As a precondition to filing a Title VII claim in federal court, a Plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Deravin v. Kerik,* 335 F.3d 195, 200-01 (2d Cir.2003). In New York, a Title VII claim must be filed with the EEOC within 300 days of the alleged unlawful act. *Harris v. City of N.Y.,* 186 F.3d 243, 248 n. 2 (2d Cir.1999); *see also Pikulin v. C.U.N.Y.,* 176 F.3d 598, 599 (2d Cir.1999); U.S.C. § 2000e-5(1).[FN10] This Circuit has adopted a "continuing violation exception to the Title VII limitations period," under which, "if a Title VII Plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53 (2d Cir.1993). The Supreme Court, however, has held that Title VII "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period" established by § 2000e-5(1). *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 105 (2002). "Discrete acts," for these purposes, include the "failure to promote"; "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate

actionable 'unlawful employment practice.' " *Id.,* 536 U.S. at 114. The Report therefore correctly rejects Plaintiff's attempt to rely on the "continuous violation" exception, finding it to be "misplaced" because the failures to promote Plaintiff were discrete acts under *National Railroad Passenger Corp.,* 536 U.S. at 114, 122. Report 13. Plaintiff's objection to this finding lacks merit.[FN11]

> FN10. Neither party contends that Plaintiff filed charges with a state or local agency before filing it with the EEOC; nor is there any indication in the record that the EEOC itself did so on Plaintiff's behalf. Because, however, Defendants state that the 300-day limitation applies, the Court accepts that time limit rather than Title VII's 180-day limitation. *See Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 713 n. 1 (2d Cir.1996) ("We find no reference in the record to [Plaintiff] having filed her charge with a state or local equal employment agency before filing with the EEOC. However, since the parties agree that the 300-day period applies in this case, we will accept this as a stipulated fact.").

> FN11. It is not clear whether the "continuous violation" exception, as formulated by this Circuit (*i.e.,* as applicable to claims other than hostile work environment), survives *National Railroad Passenger Corp.* Even if Plaintiff may rely upon this exception, he has not alleged the existence of an unlawful generalized and ongoing policy or practice. *See, e.g., Van Zant,* 80 F.3d at 713; *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 907 (2d Cir.1997); *Noble v. Univ. of Rochester,* 535 F .2d 756, 758 (2d Cir.1976). Plaintiff has not shown "specific and related instances of discrimination ... permitted by the employer"-in this case the City of New York-"to continue unremedied for so long as to amount to a discriminatory policy or practice." *Van*

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1029895 (S.D.N.Y.)
**(Cite as: 2007 WL 1029895 (S.D.N.Y.))**

*Zant,* 80 F.3d at 713 (internal quotation marks and citation omitted).

**\*5** Thus, Plaintiff may bring this action, under Title VII, only for failures to promote him after June 9, 1999, which is 300 days before he filed his EEOC charges. Plaintiff's claims for Defendants' discrete acts on March 23, 1998; June 1, 1998; October 19, 1998; March 1, 1999; and May 21, 1999, are time-barred. Only the failures to promote Plaintiff on July 7, 1999, and January 24, 2000, are actionable.

**B. Merits**

Plaintiff cannot establish that Defendants' failure to promote him was based on unlawful race-based discrimination or retaliation.

**1. Race-Based Discrimination**

Plaintiff contends that Defendants denied him a promotion because he is African-American. Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To survive a motion for summary judgment, a Title VII plaintiff must satisfy a three-part burden-shifting test. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *Dawson v. Bumble & Bumble,* 398 F.3d 211, 216 (2d Cir.2005).

Under the three-part *McDonnell Douglas* test, Plaintiff must first establish a *prima facie* case of discrimination by showing that: (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination based on his membership in the protected class. *Dawson,* 398 F.3d at 216 (quoting *Mario v. P & C Food Mkts., Inc.,* 313 F.3d 758, 767 (2d

Cir.2002)). If Plaintiff establishes such a *prima facie* case, "a presumption of discrimination arises and the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the adverse decision or action." *Id.* (quoting *Mario,* 313 F.3d at 767). "If the defendant proffers such a reason, the presumption of discrimination created by the *prima facie* case drops out of the analysis." *Id.* (quoting *Mario,* 313 F.3d at 767). Plaintiff must then show, by a preponderance of the evidence, that the reason given by Defendants is pretextual, and that the adverse action was in fact motivated by discrimination. *Id.* The Supreme Court has "cautioned that these shifting burdens are meant only to aid courts and litigants in arranging the presentation of evidence: 'The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 985-86 (1988) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981)).

**a.** *Prima Facie* **Case**

The Court adopts the Report's conclusion that Plaintiff stated a *prima facie* case for race-based discrimination. In their objections, Defendants argue that Plaintiff has failed to establish a *prima facie* case of discrimination with respect to the July 1999 and January 2000 promotions. Def. Resp. Objections Section C. Overall, however, Defendants argue that "the Report and Recommendation should be adopted by this court in its entirety." *Id.* ¶ 2. [FN12] In light of these contradictory statements, the Court assumes that Defendants do not object to the Report's finding that Plaintiff has established a *prima facie* case of discrimination.

> FN12. Defendants blur the issue of whether Plaintiff has established a *prima facie* case of discrimination with the question of whether Plaintiff has met his burden of establishing that the legitimate reasons proffered by Defendants (for the actions

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1029895 (S.D.N.Y.)
(Cite as: 2007 WL 1029895 (S.D.N.Y.))

complained of) are pretextual. *See* Def. Resp. Objections Section C heading ("Plaintiff Cannot Establish a Prima Facie Case of Discrimination. Defendants Have Established a Legitimate Business Reason for the Decision Not to Promote Plaintiff in July 1999 and January 2000 and Plaintiff has Failed to Establish Pretext."); *id.* ¶¶ 10-15 (discussing reasons given by Kerik for not promoting Plaintiff and promoting other candidates, and concluding that the evidence submitted by Plaintiff "is not enough ... to establish that he was more qualified than the candidates selected for promotion nor, does such evidence, in and of itself, establish pretext" and, submitting, accordingly, that "Plaintiff has failed to establish a prima facie case with respect to the July 1999 and January 2000 promotions decisions he challenges").

*\*6* The Court finds no clear error in the Report's conclusion that Plaintiff has satisfied his minimal burden of establishing a *prima facie* case of race-based discrimination in violation of Title VII. As noted in the Report, it is not disputed that Plaintiff has met the first three prongs of a *prima facie* race discrimination case. Report 19-20.

An inference of discrimination may be drawn from the fact that similarly situated persons, that is, assistant deputy wardens who had been in that rank for at least one year who are not in Deravin's protected class, were treated more favorably than he, in that they were promoted to deputy warden while he was not ... in July 1999 and January 2000.

Report 20.[FN13]

FN13. Contrary to what Defendants appear to suggest, Plaintiff need not show that he was *more* qualified than the successful candidates to establish a *prima facie* case. Because the only requirement for promotion from Assistant Deputy Warden to

Deputy Warden is that a candidate have held the former rank for at least one year, Plaintiff is sufficiently similarly situated to the candidates who were successful in July 1999 and January 2000, for the purposes of establishing a *prima facie* case. Although it does not appear to be necessary to examine the applications of Plaintiff and the successful candidates in detail at this stage, the Court concludes, based on a review of those applications, that Plaintiff and the successful candidates were sufficiently "similarly situated" when they applied for the purpose of drawing a minimal inference of discrimination at the *prima facie* stage.

**b. Defendants' Legitimate and Nondiscriminatory Reasons for Failing to Promote Plaintiff**

Although Plaintiff has made a *prima facie* case of race-based discrimination, Defendants have offered legitimate, nondiscriminatory reasons for failing to promote Plaintiff that Plaintiff cannot overcome. Once a plaintiff has established a *prima facie* case, and a presumption of discrimination therefore arises, "[t]he burden that shifts to the defendant ... is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Tex. Dep't of Cmty. Affairs,* 450 U.S. at 254. If the defendant meets this burden of production, the plaintiff "must have the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision." *Id.* at 255. The plaintiff "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* "This burden now merges with the ultimate burden of persuading the court that [Plaintiff] has been the victim of intentional discrimination"; indeed, at all times, [

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1029895 (S.D.N.Y.)
**(Cite as: 2007 WL 1029895 (S.D.N.Y.))**

][P]laintiff retains the burden of persuasion." *Id.*

### i. July 1999 Promotions

In July 1999, the DOC promoted only two candidates: Richard Pagan, who is Hispanic, and Gerard Parsons, who is Caucasian. Def. Ex. Q. Both Pagan and Parsons had more seniority in the Assistant Deputy Warden rank than Plaintiff at that time. *See* Def. Ex. Q (showing the dates of promotion to Assistant Deputy Warden rank to be December 22, 1995, for Pagan and September 11, 1989, for Parsons, while Plaintiff was promoted to that rank on August 30, 1996); Def. Ex. E at 208:15-21. Kerik emphasized that Parsons, in particular, had been waiting for his promotion for a long time and had seven years more seniority in rank than Plaintiff. Def. Ex. E at 209:25-210:4. Kerik also testified that Pagan, whom he knew, was an "outstanding officer" who served as director of investigations in the internal affairs division. *Id.* at 209:16-19. Pagan and Parsons both had "outstanding" performance evaluations, and their applications included letters of recommendation. Def. Exs. GG, HH. Kerik described the individuals who were promoted in connection with the July 1999 vacancy announcement as being "overachievers." *Id.* at 210:20-22.

**\*7** Kerik testified that Plaintiff, on the other hand, had twice behaved poorly: (1) by acting unprofessionally and disrespectfully while he was a tour commander; and (2) by coming to a promotion interview with Kerik while out of uniform. Def. Ex. E at 183:3-9.[FN14] Furthermore, Plaintiff's January 1999 application, unlike those of Pagan and Parson, did not include an "outstanding" performance evaluation and similarly positive letters of recommendation. Pl.Ex. F.[FN15]

> FN14. The Report states that Kerik testified accordingly as to Plaintiff's July 1999 application. Report 21. The record is not entirely clear on this point: Kerik appears to have made this statement when questioned about Plaintiff's prior application

for promotion, in August/September 1998, but the questions, in this section of the record, were generally framed more broadly, and it appears that Kerik's statement concerning the importance of such considerations (as to Plaintiff's conduct) was not limited to the August/September 1998 application.

> FN15. Plaintiff claims to have had an evaluation of "outstanding (-)," but has not provided the Performance Evaluation for his January 1999 application. Pl. Exs. I (page 3), F.

### ii. January 2000 Promotions

In January 2000, ten Assistant Deputy Wardens received promotions. Seven of those promoted candidates were not African-American: Peter Curcio, Edward Gavin, Walter Hamilton, Ercole Pagano, Gregory Smith, Thomas Tsotsoros, and Frank Squillante. Def. Ex. Q (00122-00123). Of those seven, three (Curcio, Smith, and Tsotsoros) were senior in rank to Plaintiff; three (Gavin, Hamilton, and Squillante) had the same seniority in rank as Plaintiff; and one (Pagano) had a lower seniority in rank than Plaintiff, by two months. *See* Pl. Exs. I (pages 4-5), G, Q, X, P, T, R; Def. Ex. Q (00122-00123). Pagano, according to Kerik, had been working in a capacity two ranks above his title for a year and a half before his promotion in January 2000. Def. Ex. E at 268:8-269:4. No evidence suggests that Plaintiff had been serving in a comparable position.

Gavin, Hamilton, and Squillante had the same seniority rank as Plaintiff. Kerik testified that Gavin had worked for him as his executive assistant. Def. Ex. E at 272:22-23. Kerik also stated that Gavin was "a troubleshooter for the agency," and, as such, was given many different assignments. Kerik described Gavin as "relentless, tireless," adding that Gavin "spent an enormous amount of his own time at work," and "worked around the clock." *Id.* at

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1029895 (S.D.N.Y.)
(Cite as: 2007 WL 1029895 (S.D.N.Y.))

273:7-13. Although Kerik did not remember Hamilton when first asked about him during the deposition, Kerik recalled that Hamilton had a "totally outstanding evaluation" after reviewing his application file. Def. Ex. E at 274:9-10. Squillante, according to Kerik, was a "phenomenal leader." Def. Ex. E at 270:10. He remembered that "people in the facility [where Squillante worked] would really listen to him," and he was "good with the officers." *Id.* at 270:10-14. Squillante was "in charge of programs or worked in the programs division," and "created a lot of innovative programs on his own." *Id.* at 270:14-18.

Curcio, Smith, and Tsotsoros were senior in rank to Plaintiff. Curcio, who had been an Assistant Deputy Warden for about three months longer than Plaintiff but had less seniority at the DOC overall, also received a promotion in January 2000. Def. Ex. Q. Kerik testified that Curcio was "a phenomenal correction officer and a good leader," and "someone that the troops would follow." Def. Ex. E at 264:15-18. Before the interview, Curcio "had already come to [Kerik's] attention as being a good leader," *id.* at 265:23-25. Curcio had "an outstanding, totally outstanding performance evaluation," and he "was highly recommended for promotion by his warden," *id.* at 265:15-17, and had twice attended courses at the Federal Law Enforcement Training Center. *Id.* at 265:10-13. Kerik stated that he did not consider the fact that Plaintiff had greater overall seniority than Curcio. Pl.Ex. H at 252:25-253:12. Kerik also testified that, although Curcio had been the subject of: (1) five use-of-force investigations, none of which resulted in charges; (2) two "disciplinary cases," including a use-of-force investigation for which he was fined 30 days' pay; and (3) an investigation concerning his failure to safeguard a firearm, which was not prosecuted, Pl.Ex. E at 254:24-255:5; *see also* Pl. Exh. Q, no single factor would preclude his promotion. Pl.Ex. E at 255:9-21. Kerik stated that he did not compare Plaintiff's and Curcio's applications side by side, but, rather, promoted Curcio because Kerik "thought he was the best person for the job at the

time." Pl.Ex. E at 263:10-18.

**\*8** Smith and Tsotsoros, however, were not discussed with Kerik during his deposition. Defendants did not address the promotions of these two individuals in their Memorandum of Law in Support of their Motion for Summary Judgment.

Kerik testified repeatedly that no one factor was determinative in promotion decisions. Def. Ex. E at 177:4-10. He considered education, military service, seniority in rank, and alleged misconduct (even if no charges were ultimately filed). Pl.Ex. H at 189:21-190:19; Def. Ex. E at 153:16-154:7. Kerik testified that he did not compare candidates to one another, and that he selected candidates for promotion as the interviews progressed (rather than waiting until he had interviewed all of the candidates). Because Defendants have articulated legitimate and nondiscriminatory reasons for failing to promote Plaintiff, the Court concludes that Defendants are entitled to summary judgment with respect to all of Plaintiff's claims of race-based discrimination, except as to the Plaintiff's allegations regarding the January 2000 promotions to deputy warden of Smith and Tsotsoros.

**2. Retaliation**

Plaintiff cannot state a *prima facie* claim for retaliation. Title VII prohibits an employer from "discriminat[ing] against any of [its] employees ... because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [Title VII]." 42 U.S.C. § 2000e-3(a). Retaliation claims brought pursuant to Title VII are evaluated under a three-step burden-shifting test, which follows the *McDonnell Douglas* framework. *See Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173 (2d Cir.2005); *Terry v. Ashcroft,* 336 F.3d 128, 141 (2d Cir.2003). Plaintiff must first establish a *prima facie* case, by showing: " '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1029895 (S.D.N.Y.)
**(Cite as: 2007 WL 1029895 (S.D.N.Y.))**

causal connection between the protected activity and the adverse employment action.' " *Jute,* 420 F.3d at 173 (quoting *McMenemy v. City of Rochester,* 241 F.3d 279, 282-83 (2d Cir.2001)). A plaintiff's establishment of a *prima facie* case gives rise to a presumption of retaliation, at which point "the onus falls on the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id.* Once the defendant offers such a reason, "the presumption of retaliation dissipates," and the plaintiff must show that the reason given is pretextual, and that "retaliation was a substantial reason for the adverse employment action." *Id.* at 173, 180.

**a. Prima Facie Case**

Although Plaintiff's burden at the *prima facie* stage is "minimal," he cannot establish a causal connection between his protected activity-defending himself against Pinero's charges of sexual harassment-and any alleged adverse employment action. *Jute,* 420 F.3d at 173 (internal quotation marks and citation omitted). In determining whether Plaintiff has satisfied his *prima facie* burden, the Court's role is to determine "only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Id.* It is undisputed that Plaintiff has met the first three prongs of a Title VII retaliation *prima facie* case. Report 29. [FN16]

> FN16. As to the first prong, in ·this case, "previous litigation has established that in defending himself at the SDHR against Pinero's allegations of sexual harassment, Deravin engaged in an activity protected under Title VII." Report 29 (citing *Deravin v. Kerik,* 335 F.3d 195 (2d Cir.2003)). Defendants do not contend that either the second or third prongs are not met here. *Id.*

\*9 "Proof of a causal connection can be established 'directly through evidence of retaliatory animus directed against the plaintiff,' or 'indirectly by show-

ing that the protected activity was followed closely by the discriminatory treatment, ... or through other evidence such as disparate treatment of fellow employees who engaged in similar conduct.' " *Richardson v. N.Y. State Dep't of Corr. Servs.,* 180 F.3d 426, 447 (2d Cir.1999) (citations omitted). Plaintiff, in opposing Defendants' motion for summary judgment, contends that he has established a *prima facie* case because he has shown: (1) direct evidence of a retaliatory motive on the part of Kerik insofar as Meringolo told him that Kerik stated to Meringolo that Plaintiff would never receive another promotion; and (2) temporal proximity between the protected activity and the adverse employment actions. Pl.Ex. A (Pl.'s Aff. ¶¶ 16, 18); Def. Ex. A at 163:11-164:24, 220:6-12 (Plaintiff's deposition testimony); Pl. 56.1 Stat. ¶¶ 77-80 and Plaintiff's Counter-Statement of Facts ("Pl. 56.1 Counter-Stat.") ¶¶ 73-74. The Report correctly rejects both of these claims.

**i. Direct Evidence**

Plaintiff has offered no admissible evidence to establish a causal connection between his protected activity and Defendants' alleged retaliation. Both Kerik and Meringolo "testified at their depositions that Kerik never made the statement Deravin attributes to him." Report 31. Meringolo testified that Kerik did not tell him that he would *not* promote Plaintiff because of Plaintiff's successful defense against Pinero's sexual harassment claims, Def. Ex. J 30:16-19, and that he had never spoken to Kerik about Pinero. *Id.* at 32:21-25.

The Report acknowledges that Plaintiff alleges that he recorded the conversation with Meringolo where Meringolo allegedly made the statement. The Report, however, notes that: (1) Meringolo was not confronted with the purported audiotape of the conversation at his deposition; (2) the audiotape was not provided to the Court and is therefore "not a part of the record evidence," and, in any event, the audiotape "is not competent evidence"; and (3) although an alleged transcript of the audiotape was

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1029895 (S.D.N.Y.)
(Cite as: 2007 WL 1029895 (S.D.N.Y.))

provided to the Court, "the defendants contend that the 'transcript' is not accurate and complete and, furthermore, it has never been authenticated." Report 31.

Plaintiff claims that he produced the audiotape and transcript at the time he filed the January 25, 2005, summary judgment motion. Pl. Objections 3 n. 1. The Report, however, states that Plaintiff never submitted the audiotape or the transcript. Report 31.[FN17] Because neither the audiotape nor the transcript were provided to the Magistrate Judge, or to this Court with motion papers, the Court will not consider that evidence now. *See Robinson v. Keane,* No. 92 Civ. 6090, 1999 WL 459811, *4, 1999 U.S. Dist. LEXIS 9766, *11 (S .D.N.Y. June 29, 1999) ("An objecting party may not raise new arguments that were not made before the Magistrate Judge."). *See also Rosello v. Barnhart,* No. 02 Civ. 4629, 2004 WL 2366177, *3, 2004 U.S. Dist. LEXIS 21076, *8-*9 (S.D.N.Y. Oct. 20, 2004) (stating that plaintiff's objection was untimely because plaintiff did not raise the claim before the Magistrate Judge).

> FN17. Likewise, the Court did not receive a copy other than that Deravin submitted with his objections to the Report.

**\*10** Even if the audiotape or transcript had been presented properly to the Court, they are problematic because: (1) they have not been authenticated; and (2) they constitute hearsay not falling within one of the recognized hearsay exceptions. First, Rule 901 of the Federal Rules of Evidence states that "the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Here, Plaintiff says only that he "authenticates the tape in his affidavit." Pl. Objections 4.[FN18] This purported authentication is cursory, however, as Plaintiff has not identified the date the tape was made or stated that he was responsible for recording the conversation.

> FN18. The relevant portion of the affidavit states: "The tape and transcript of my conversation with Peter Meringolo which was produced to defendants and is annexed hereto has not been altered" and "The tape and transcript of the tape has not been refuted by Meringolo or defendants." Pl.Ex. A, ¶¶ 11-12.

Second, the audiotape and transcript constitute hearsay not falling within a recognized exception. Plaintiff argues that the audiotape is admissible: (1) as a recorded recollection; (2) as a statement of then-existing mental condition; and (3) as a party admission. Pl. Objections 4-5. None of these exceptions or exclusions applies. Rule 803(5) of the Federal Rules of Evidence authorizes the introduction of a past recorded hearsay statement where a witness no longer adequately remembers the substance. Plaintiff contends that the audiotape is admissible because Meringolo can no longer recall the statements he made. Pl. Objections 5. The party wishing to introduce Rule 803(5) evidence, however, must establish that it "concern[s] a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, [and that it has] been made or adopted by the witness when the matter was fresh in the witness' memory and [ ] reflect[s] that knowledge correctly." *Parker v. Reda,* 327 F.3d 211, 213 (2d Cir.2003). [FN19] Plaintiff has not made such a showing. Meringolo's statements do not fall within the purview of Rule 803(3), which provides an exception to the hearsay rule for "[a] statement of the *declarant's* then existing state of mind." Fed.R.Evid. 803(3) (emphasis added). Because Meringolo is the declarant, not Kerik, Meringolo's statements about Kerik's state of mind remain hearsay. Nor are the statements party-admissions, given that Meringolo is not a party to this matter. Rule 801(d)(2).

> FN19. Assuming, *arguendo,* that Plaintiff had met the prerequisites for introducing Rule 803(5) evidence, the audiotape and

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1029895 (S.D.N.Y.)
**(Cite as: 2007 WL 1029895 (S.D.N.Y.))**

transcript would still be inadmissible, as Meringolo's statements are allegedly summaries of statements made by *Kerik.*

Even if the Court were to consider statements purportedly made in the audiotape and transcript, the only relevant statement by Meringolo is: "How stupid is this man [Kerik] that he was going to ... actually pass you over for Pinero?" Pl.Ex. Y (D00068). This single comment does not suggest that Kerik himself stated that he would never promote Plaintiff in the future because Plaintiff successfully defended himself in an EEO case brought by Pinero. The audiotape and transcript indicate that Meringolo, when describing to Plaintiff his conversation with Kerik about Plaintiff's application for a promotion, stated that Kerik had expressed concern about the fact that EEO charges were pending against him. Meringolo had told Kerik that Plaintiff had not been found guilty of those charges. Pl.Ex. Y (D000076). Meringolo added: "The name Pinero never came out." Pl.Ex. Y (D000076). Thus, Plaintiff's own assertion as to what he was told by Meringolo is not supported by the evidence he provides, which is allegedly the transcript of the conversation in which Meringolo made such a statement.

**\*11** Plaintiff also makes a different objection: he contends that the Report ignores other public statements made by Kerik from which an inference of retaliation should be drawn. Pl. Objections 6. Plaintiff points to letters from other Deputy Wardens stating that Kerik told them that anyone who was "disloyal" to him would lose his or her job or be demoted. *Id.;* Pl. Exhs. Z, AA, BB. This type of evidence, even if it were admissible, is too vague to show the specific causal connection that Plaintiff must establish.

**ii. Temporal Proximity**

Plaintiff's temporal proximity argument fails because the Pinero incident happened long before Plaintiff was denied a promotion. Pinero filed a complaint with the SDHR in 1995. Plaintiff defended himself against the charges in 1995 and 1996. On November 25, 1996, the SDHR dismissed Pinero's sexual harassment complaint against Plaintiff. The first actionable adverse employment action taken against Plaintiff was in July 1999, when he was not promoted to the position of Deputy Warden. The Report concludes that this three-year gap "is too great to find the requisite temporal proximity between the two events." Report 30.[FN20]

> FN20. Plaintiff objects that the question of temporal proximity raises an "issue of fact" that precludes summary judgment: whether Kerik and Pinero still had an ongoing relationship up until 2001." Pl. Objections 6-7. This objection is meritless. Whether Kerik and Pinero were still engaged in a romantic relationship in 2001 is irrelevant to the question of whether Plaintiff has established temporal proximity between his protected activity and the adverse actions which he claims he suffered as a result of retaliation.

The Court agrees that the length of time between the protected activity and the adverse action is, in this case, too long to find the necessary temporal proximity. "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.' " *Clark County School Dist. v. Breeden,* 532 U.S. 268, 273 (2001) (quoting *O'Neal v. Ferguson Constr. Co.,* 237 F.3d 1248, 1253 (10th Cir.2001)). *See also Lovejoy-Wilson v. NOCO Motor Fuel, Inc.,* 263 F.3d 208, 224 (2d Cir.2001) (to establish a causal connection indirectly, in a retaliation claim, the protected activity must be "closely followed in time by the adverse action"). This Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1029895 (S.D.N.Y.)
**(Cite as: 2007 WL 1029895 (S.D.N.Y.))**

relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Gorman-Bakos v. Cornell Co-op Extension of Schenectady County,* 252 F.3d 545, 554 (2d Cir.2001) (collecting cases); *see id.* 554 n. 5 (noting that "the district courts in this circuit" have also not "drawn a bright line rule") (collecting cases).[FN21] Time periods greater than one year have generally been rejected when offered to indirectly establish a causal connection between an act and its purported consequences. *See, e.g., Richardson,* 180 F.3d at 447 (finding a "two year gap ... too wide to support the inference that [Plaintiff] was terminated in retaliation for complaining about discrimination"); *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.,* 411 F.3d 306, 314 (2d Cir.2005) (finding that no causal connection was established where over a year passed between the protected activity and the adverse action, and other factors indicating good faith on the part of the defendants were present); *Daly v. Presbyterian Hosp.,* No. 98 Civ. 4253, 2000 WL 8268, at *6 (S.D.N.Y. Jan. 4, 2000) ("There is a lapse of time of over one year [between Plaintiff's complaint and the her termination] which, in the absence of other direct or circumstantial evidence of retaliation, is insufficient evidence of causation."); *Castro v. Local 1199,* 964 F.Supp. 719, 729 (S.D.N.Y.1997) (stating, where Plaintiff was fired over a year after she filed a complaint with the EEOC, that "[c]ourts have found that a lapse in time of this magnitude is insufficient to establish a causal connection" and concluding that Plaintiff failed to establish the necessary causal connection for a *prima facie* case of retaliation).[FN22] A time period of almost three years [FN23] between the protected activity and the first alleged adverse action is too long to constitute the type of "very close" temporal proximity that can indirectly show the causal connection required to establish a *prima facie* case of retaliation.[FN24]

> FN21. The following time periods (between the protected activity and the adverse action), for example, have been found to show the necessary temporal

proximity: twelve days, *see Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170, 1178 (2d Cir.1996); two weeks, *see Feingold v. State of New York,* 366 F.3d 138, 157 (2d Cir.2004); less than a month, *Lovejoy-Wilson,* 263 F.3d 208, 224 (2d Cir.2001); and less than two months after filing complaint with management and ten days after filing a complaint with the state division of human rights, *see Quinn v. Green Tree Credit Corp.,* 159 F.3d 759, 769 (2d Cir.1998); six months, *see Suggs v. Port Auth. of N.Y. and N.J.,* No. 97 Civ. 4026, 1999 WL 269905, at *6 (S .D.N.Y. May 4,1999); and eight months, *see Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 45-46 (2d Cir.1980).

> FN22. In some instances, time periods much shorter than the one involved here have been found to be too long to establish a causal connection. *See, e.g., Hollander v. Am. Cyanamid Co.,* 895 F.2d 80, 85-86 (2d Cir.1990) (finding that Plaintiff did not establish causal relationship where three and a half months elapsed between complaint and adverse action); *Sgarlata v. Viacom, Inc.,* No. 02 Civ. 7234, 2005 WL 659198, at *7 (S.D.N.Y. Mar. 22, 2005) (finding that Plaintiff did not establish causal connection based on temporal proximity where eight months elapsed between complaint and termination); *Ponticelli v. Zurich Am. Ins. Group,* 16 F.Supp.2d 414, 436 (S.D.N.Y.1998) (finding that time period of two-and-a-half months did not constitute temporal proximity establishing the causal connection prong of a retaliation claim).

> FN23. Even if the non-actionable failures to promote Plaintiff (prior to June 1999) were considered here, the earliest adverse employment action after Plaintiff defended himself against the charges brought by

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 1029895 (S.D.N.Y.)
(Cite as: 2007 WL 1029895 (S.D.N.Y.))

Pinero is March 23, 1998, when Plaintiff was not promoted to Deputy Warden after his first application for such a promotion. This period of 16 months is too long to establish "temporal proximity."

FN24. During that time period, Plaintiff was promoted to the position of Assistant Deputy Warden effective August 30, 1996. It is undisputed that, in 1996, Kerik served as First Deputy Commissioner and was, as such, responsible for reviewing the promotional files of candidates for the position of Assistant Deputy Warden and selecting candidates whom he would then submit to the DOC Commissioner for final approval. Def. 56.1 Stat. ¶ 22; Pl. 56.1 Stat. ¶ 22. Plaintiff's claim that his "promotion to Assistant Deputy Warden was not at the control or direction of Kerik," Pl. Memo. 18, is therefore unfounded. In short, soon after Plaintiff appeared in the proceedings before the SDHR, and while the case was still pending, Plaintiff was promoted to the rank of Assistant Deputy Warden, at a time when Kerik was responsible for selecting promotional candidates for this rank and submitting them for final approval.

*12 Thus, the Court finds that Plaintiff has failed to establish a *prima facie* case of retaliation under Title VII.

## IV. Conclusion

For the reasons stated above, the Court adopts the Report. Defendants' motion for summary judgment [52] is denied as it relates to Plaintiff's allegation of race discrimination in connection with the January 2000 promotions to deputy warden of two individuals, Gregory Smith and Thomas Tsotsoros, and granted in all other respects. The parties shall submit a pre-trial order by May 4, 2007.

SO ORDERED.

S.D.N.Y.,2007.
Deravin v. Kerik
Not Reported in F.Supp.2d, 2007 WL 1029895 (S.D.N.Y.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.