Westlaw.

Not Reported in F.Supp.2d, 2004 WL 2216524 (D.Conn.)
(Cite as: 2004 WL 2216524 (D.Conn.))

C

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.
Susan DEMURIA and Michael DeMuria
v.
Albert F. HAWKES and Judith A. Marshall
No. 3:00CV1591 (AHN).

Sept. 24, 2004.

John R. Williams, Williams & Pattis, New Haven, CT, for Plaintiffs.

Kenneth J. McDonnell, James Field Spallone, Gould, Larson, Bennet, Wells & McDonnell, P.C., Essex, CT, Timothy P. Pothin, Hugh F. Keefe Esq., Eric P. Smith, Lynch, Traub, Keefe & Errante, P.C., New Haven, CT, A. Jeffrey Somers, Law Offices of Larry Lewis, Meriden, CT, for Defendants.

### RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

NEVAS, J.

*1 The plaintiffs, Michael and Susan DeMuria ("the DeMurias") bring this § 1983 action against the defendants Albert Hawkes ("Hawkes") and Judith Marshall ("Marshall"). Hawkes is a corporal in the Clinton, Connecticut police department. Marshall is a private citizen and a resident of Clinton. The DeMurias claim that Hawkes and Marshall acted jointly to violate their Fourteenth Amendment rights to equal protection and intentionally caused them to suffer emotional distress.

Presently before the court are the summary judgment motions of Hawkes and Marshall.[FN1] For the following reasons, the motions [doc. # 49 and doc. # 52] are GRANTED.[FN2]

FN1. Previously, this court dismissed the DeMurias' due process and equal protections claims. On appeal, the Second Circuit held that the court erred in dismissing the equal protection claim for failing to satisfy the requirements for a class of one action. The Second Circuit affirmed the court's dismissal of the DeMurias' due process claim.

FN2. The DeMurias' claim that the motions should be denied as untimely because they have not had time to conduct discovery, is specious. According to the parties' Rule 26(f) report, the discovery deadline was October 1, 2001. The DeMurias never moved for an extension of that deadline. Accordingly, these motions are timely.

### FACTS

The DeMurias and the Marshalls were neighboring landowners in Clinton, Connecticut. In April 1998, Marshall and her husband sued the DeMurias and a condominium complex in Connecticut state court. The suit involved a dispute over surface water run off from the DeMurias' property onto the Marshalls' property. The Marshalls prevailed in that action and were awarded damages.

In this action, the DeMurias allege that at the time the state court action commenced, Marshall began a year-long campaign to harass them, and that Hawkes aided and abetted her unlawful acts by failing and refusing to protect them and by protecting Marshall. However, of all the acts of harassment, only one was undisputedly perpetrated by Marshall. That act, which occurred in January 1999, involved a telephone call to an excavating company. The caller said she was a member of the DeMuria family, and placed an order to have the DeMurias' entire back yard excavated. Michael DeMuria ("DeMuria") reported this incident to Hawkes. Hawkes investigated the incident, and based on the

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 2216524 (D.Conn.)
(Cite as: 2004 WL 2216524 (D.Conn.))

excavating company's Caller ID information, determined that Marshall had made the call.

Hawkes then applied for an arrest warrant for Marshall on March 9, 1999. In his affidavit in support of the warrant, Hawkes stated that DeMuria reported to the Clinton police that his neighbor, Robert Marshall, was trying to blame DeMuria for property damage caused by surface water run off from the DeMuria property and that the DeMurias have had numerous incidents of harassment and criminal mischief done to them or their property since the dispute began. He provided details of some of the acts of harassment reported by DeMuria, including the one directing the excavating company to dig up the DeMuria's back yard. He detailed the steps he took to determine who had made the call to the excavating company and determined that there was probable cause to believe that Marshall was the perpetrator.

On March 22, 1999, the prosecuting attorney to whom the matter was assigned for review, returned the warrant to Hawkes with a note stating that he needed to "establish a connection between [Marshall] and [DeMuria]. As of now insufficient evid. to prosecute." Hawkes did not understand what additional information was needed and took no further action.

*2 On July 23, 1999, after he received a letter from the DeMurias' attorney, the prosecuting attorney sent a memo to Hawkes stating "[t]his warrant application was returned on 3/22/99 for further work. It does not appear anything was done.... [The letter from the DeMurias' attorney] contains information that had it been in your affidavit I would have signed the warrant. He indicated Judy Marshall is a party to a lawsuit with the complainant and that she is married to Robert Marshall. Contact DeMuria and contact his lawyer for that information and submit a revised affidavit."

On August 11, 1999, Hawkes submitted a revised warrant application that was approved by the prosecuting attorney and an arrest warrant for Marshall was issued. Marshall was charged with one count of harassment. Marshall was arrested on August 24, 1999, applied for accelerated rehabilitation and was placed on probation.

DeMuria made numerous other complaints of harassment to the Clinton police department before the January 1999, incident involving the excavating company. For instance, in April 1998, DeMuria reported an incident involving firearms to Officer Joseph Flynn ("Flynn"). According to the incident report, DeMuria told Flynn that Mr. Marshall told him that he had guns and "may" use them to take shots at DeMuria. Flynn said that he encouraged DeMuria "to make a complaint but [he] refused. He stated he wanted it noted ." Flynn's report also states that Flynn told DeMuria he would contact Mr. Marshall, but "DeMuria requested I not contact him. He wants incident noted only. Very insistent on this only and not taking police action."

On April 17, 1998, DeMuria made a trespassing complaint against James Scofield. Officer Flynn investigated this complaint and according to his incident report, DeMuria reported that Scofield trespassed and took pictures of a catch basin DeMuria had recently constructed on his property. No arrest was made.

On September 11, 1998, DeMuria called the Clinton police to report that a woman who said she was a member of the DeMuria's family called the Connecticut Water Company and requested their water be shut off. Hawkes answered DeMuria's call and investigated the incident. According to Hawkes's incident report "DeMuria was upset. He believed that one of his neighbors had something to do with calling the water company. DeMuria has an ongoing disagreement with most of his neighbors. He said that he had phoned the water company and ... they would look into the problem and see if there was a mix up of addresses on College St." This incident was the first time Hawkes had contact with the DeMurias. The DeMuria's water was not shut off. Hawkes did not make an arrest.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 2216524 (D.Conn.)
(Cite as: 2004 WL 2216524 (D.Conn.))

Page 3

On October 6, 1998, DeMuria called the Clinton police and reported that an unknown male was yelling and swearing in the neighborhood. Officer Thomas Lucas investigated and filed a report stating "[c]hecked area, all quiet. Negative contact."

*3 On September 30, 1998, DeMuria called the Clinton police to report that he had received a letter in the mail that he deemed to be harassment. The letter stated "[t]he other day was great. Let's get together and do it again. Call me. Love, Nan."

Officer John Brymer investigated the incident. According to his report, "DeMuria believes it is one of his neighbors, but does not have any evidence to that fact. He does have an ongoing dispute with them regarding a zoning issue, but as stated, there is no evidence that the letter comes from either the Toppings or the Marshalls."

Officer Todd Carlson of the Clinton police investigated a complaint from DeMuria on October 18, 1998. DeMuria said that he had returned home from vacation and found that a small pine tree he had planted behind his mailbox had been stolen. According to Officer Carlson's comprehensive report,

DeMuria stated that for several months ... he has not been getting along with some of his neighbors. He states this is due to a flooding problem on the street which they claim is due to excavating work DeMuria had done in his back yard this past summer. DeMuria stated that the neighbors who are siding against him are Bob and Judy Marshall, ... Mike and Patricia Ivarone, ... and Lloyd Topping, [and that] the Marshalls have since moved from the area due to all of the bad blood between them. DeMuria stated that the tree in question used to belong to the Marshalls and when the new neighbors moved in they asked DeMuria if he wanted it.... DeMuria stated that there have been several petty acts of retribution perpetrated against him and he believes the Marshalls are in some way responsible.

[While I was talking with DeMuria] Patricia Iavarone walked across the street to speak with us ....

[she] wanted to make sure she was not being accused of anything.... She became very upset and told DeMuria that he and his wife were responsible for all of the animosity in the neighborhood.... A few moments later I spoke to Joseph Famiglietti [who] appeared to be a neutral party in this ongoing problem. Famiglietti convinced DeMuria that making a complaint with the police would do much more harm than good. He stated that many neutral people in the neighborhood felt DeMuria was thumbing his nose at the Marshalls by planting the tree right in front of his house in the first place. DeMuria agreed that it was not a wise diplomatic choice to do that.... [Later] I spoke with Lloyd Topping at his residence. I informed him of the situation and asked him if he or his wife witnessed anything suspicious over the weekend. He said that they did not and we discussed the situation at hand. Topping stated that DeMuria is no angel and has committed several petty, annoying acts of retribution, himself, against everyone else. Topping stated that it has reached a point where he and his wife prefer not to have anything to do with DeMuria.... DeMuria did not wish to make a formal complaint. He did request that I at least speak to the Marshalls because he wanted all of this hatred to end.... I responded to ... the Marshall residence. There was no one home.... I subsequently [learned] that the Marshalls were away on vacation and had been gone all weekend therefore, could not have been responsible for the tree theft....

*4 On 10/21/98, I received a call from Mike DeMuria. He inquired about what happened after I left. I informed him of my conversation with Topping. I also informed him that the Marshalls were away all weekend .....

On December 15, 1998, DeMuria reported for the first time to Officer Hawkes that he had been receiving harassing telephone calls since November 24, 1998. Hawkes filed an incident report stating that DeMuria told him that "[t]he calls come at all times of the day and night. The calls are very threatening. The caller said 'You will get yours,' or

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 2216524 (D.Conn.)
(Cite as: 2004 WL 2216524 (D.Conn.))

there is just breathing on the other end. There have been numerous other incidents that have taken place at the DeMuria residence from property damage to having the water company turning off their water on a weekend and Bartlett tree service company arriving to cut down trees on his property. DeMuria is concerned that the welfare of his family is at stake. DeMuria will be making contact with the phone company in the morning to have a trace placed on his line. Case under investigation. AT & T required a police report. Case closed."

The DeMurias had a tracing device placed on their telephone and the calls stopped. The monitoring device was discontinued two weeks later and the calls resumed. The DeMurias then contacted Hawkes and asked him to have the device reinstalled. Hawkes told them the telephone company was unwilling to do so.

On January 13, 1999, DeMuria called Hawkes to report that he just learned that in October, 1998, someone had called his waste removal service to have his trash pickup stopped. According to a supplementary report filed by Hawkes, "[f]or some unknown reason the service was not stopped.... The company notified Mr. DeMuria on 01-13-99, that there was an oversight by the company on not getting the trash removal stop[ped].... Michael DeMuria just wanted it noted...."

In November, 1998, Hawkes told the DeMurias that if they had any further complaints they should call and ask for him so that only one officer would handle their problems. Hawkes also placed a note in the Clinton police internal journal stating "[a] number of PSR's have been taken out for Michael DeMuria, 6 College St. As we know, there is an on going dispute with his neighbors. If there is [sic] any new complaints from DeMuria, please put a copy in my box. Thanks, Gunny."

After the DeMurias learned that Hawkes had not applied for an arrest warrant for Marshall, they filed a complaint against Hawkes with the Clinton police department and an internal investigation was conducted. In connection with that investigation, Hawkes was directed to submit a report detailing his investigation of the DeMuria's complaints and to "detail any professional or social contact [he] may have had with Robert or Judy Marshall during these investigations." Hawkes was also asked to explain the time delay between his last follow-up with Marshall and the date he submitted his initial warrant affidavit.

*5 In response, Hawkes provided the following explanation regarding his affidavit for the arrest warrant: "Sometime in the month of May or early June, I received a call from Barbara Hoffman from the prosecutor [sic] office. She said she had received a phone call from DeMuria asking why the warrant was denied. I explained to her what I had put in the warrant and I thought the warrant should have been approved the first time. She said she would look into it and have someone get back to me." Hawkes also said that he submitted a revised warrant application after he received a memo from the prosecuting attorney telling him that the affidavit should state that Judy Marshall was married to Robert Marshall and that Robert Marshall had a civil lawsuit against the DeMurias for property damage caused by water run off from the DeMuria's property, and directing him to put that information in a second affidavit. With regard to the request for details of "any professional or social contact [he] had with the Marshalls during the investigation," Hawkes stated "I have [sic] no social contact with the Marshalls during these investigations. On the professional side, I did not talk to Judy Marshall after she informed me that her attorney told her not to talk to me." As far as the delay in submitting the warrant affidavit, Hawkes stated "I was out sick a few days, training for recitification [sic] and the normal work load you get on the 4-12 shift. My normal time on shift didn't allow me to give it a lot of time."

The internal investigation determined that Hawkes failed to formally document complaints he received from the DeMurias and to comply with the prosec-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 2216524 (D.Conn.)
(Cite as: 2004 WL 2216524 (D.Conn.))

Page 5

uting attorney's instructions regarding the re-submission of the warrant application for Marshall. Hawkes was charged with violating two provisions of the Department Administrative and Operations Manual.

## STANDARD

Summary judgment of a claim or defense will be granted when the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir.1991). Specifically, summary judgment on a claim shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no issue as to any material fact, and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact. If there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain summary judgment. *See Celotex*, 477 U.S. at 331. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. Whether a fact is material depends on the substantive law of the claim and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

*6 Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, to defeat summary judgment the nonmoving party must come forward with evidence such as affidavits, deposition testimony, answers to interrogatories and admissions on file, that show there is a genuine factual issue for trial. *See, e.g., Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir.2002); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir.1995).

A disputed issue is not created by a mere allegation in the pleadings, *see Applegate v. Top Assoc., Inc.*, 425 F.2d 92, 96 (2d Cir.1970), or by surmise or conjecture, *see Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980). Conclusory allegations also do not create a genuine factual issue. *See Delaware & Hudson Ry. Co. v. Conrail*, 902 F.2d 174, 178 (2d Cir.1990). Where affidavits are submitted on summary judgment they "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir.2001) (quoting Fed.R.Civ.P. 56(e)). Unsupported allegations in an affidavit that does not state that it is made on personal knowledge cannot be credited where the allegations are contradicted by the moving party's affidavit on personal knowledge. *See* F.R. Civ. P. 56(e); *see also Schoenbaum v. Firstbrook*, 405 F.2d 200, 209 (2d Cir.1968). Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the nonmoving party's case." *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir.1998).

## DISCUSSION

Pursuant to 42 U.S.C. § 1983, a person may seek damages and equitable relief against any person who, acting under color of state law, subjects such person to the deprivation of any rights, privileges, or immunities protected by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983. In this

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 2216524 (D.Conn.)
(Cite as: 2004 WL 2216524 (D.Conn.))

Page 6

case, the DeMurias allege that Hawkes and DeMauria acted in concert to violate their Fourteenth Amendment rights to equal protection. Specifically, the DeMurias assert that Marshall unlawfully harassed them by telling the water company to shut off their water, mailing a card to Michael DeMuria, making harassing phone calls to them, telling the trash removal company to discontinue their service, and instructing an excavating company to dig up their back yard. The DeMurias claim that Hawkes aided and abetted Marshall's unlawful actions and knowingly assisted her in causing injury to them. They say Hawkes failed and refused to perform his duty to protect them from Marshall's unlawful action by not investigating their complaints, falsely advising them that he did not have a relationship with Marshall and that Marshall was not his friend, providing them with incorrect information about installing a tapping device on their telephone, falsely promising to arrest Marshall, and intentionally omitting necessary information from the application for Marshall's arrest. In so doing, the DeMurias maintain that Hawkes subjected them to a different standard of police protection than any other citizens of Clinton and did so maliciously and arbitrarily to injure them because they were in a dispute with Marshall, his friend. The DeMurias also claim that the acts of Marshall and Hawkes caused them to suffer emotional distress.

*7 Marshall argues in her motion for summary judgment that she did not act under color of state law and that the DeMurias were not treated differently under the law. Hawkes maintains that the DeMurias have no evidence that he and Marshall were involved in a conspiracy, that he treated the DeMurias differently from other citizens in Clinton, or that he violated their rights to equal protection. Hawkes and Marshall also claim that the emotional distress claim is without merit.

A. *Equal Protection Claim*

There are three elements of a § 1983 claim. First, there must be state action. Second, there must be intentional deprivation of a right secured by the Fourteenth Amendment. Third, the conduct of the state actor must proximately cause injuries. Here, because Marshall is a private citizen, the DeMurias' claim against her can only be sustained if they establish that she acted in concert with Hawkes, a state actor, to deprive them of their constitutional rights. *See Spear v. West Hartford,* 954 F.2d 63, 68 (2d Cir.1992). With regard to the alleged equal protection deprivation, the DeMurias assert a "class of one" equal protection claim under *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam). To prevail on a class of one equal protection claim the DeMurias must prove that they were intentionally treated differently from others similarly situated and that there was no rational basis for the different treatment. *See id.* at 564; *see also Giordano v. City of New York,* 274 F.3d 740, 750-51 (2d Cir.2001) (holding that a plaintiff must allege and prove intentional disparate treatment, but declining to decide whether *Olech* removed the circuit's requirement that an illicit motivation be shown); *Harlen Assocs. v. Incorporated Village of Mineola,* 273 F.3d 494, 499 (2d Cir.2001) (holding that a plaintiff must show either lack of rational basis or animus under *Olech*).

1. *State Action*

As noted, Marshall, is a private citizen. Thus, to sustain this § 1983 action against her, the DeMurias must prove that Marshall acted in concert with Hawkes, a state actor, to deprive them of their civil rights. *See Wagenmann v. Adams,* 829 F.2d 196, 209 (1st Cir.1987).

In her motion for summary judgment, Marshall claims that the DeMurias cannot establish that she was involved in a conspiracy or acted in concert with Hawkes or that there was a meeting of the minds between them concerning their alleged wrongful conspiratorial purpose. In other words, Marshall claims that the DeMurias cannot come forward with evidence "sufficient to support the

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 2216524 (D.Conn.)
**(Cite as: 2004 WL 2216524 (D.Conn.))**

conclusion that [Marshall and Hawkes] directed themselves toward an unconstitutional action by virtue of a mutual understanding [or] provide facts that would establish a meeting of the minds." *White v. Walsh,* 649 F.2d 560, 561 (8th Cir.1981); *see DeJesus v. Sears, Roebuck & Co.,* 87 F.3d 65 (2d Cir.1996).

In support of this claim, Marshall relies on her affidavit and Hawkes's affidavit. Both affidavits state that they did not know each other before the events alleged in the complaint and that they did not act in concert. Specifically, Marshall states in her sworn affidavit that she did not form any plan or come to any agreement with Hawkes to deprive the DeMurias of their constitutional rights and that she never had any type of personal relationship with Hawkes. Hawkes states in his sworn affidavit that the first time he met Marshall was on January 29, 1999, while investigating a complaint of the DeMurias and that he did not have a personal or social relationship with Marshall either before or after that date.

*\*8* In opposition, the DeMurias offer no direct evidence that supports their claim that Hawkes and Marshall acted in concert. Rather, they rely on factual assertions in DeMuria's affidavit, which purport to show that Marshall and Hawkes were friends, and from that fact, they infer that they acted in concert. Specifically, in DeMuria's affidavit,[FN3] he avers: "[w]e asked defendant Hawkes directly whether he had any personal relationship with defendant Marshall. Defendant Hawkes responded that, although as a resident of a small town he knew who she was, he had no other relationship with her or her husband. We subsequently learned that these statements by defendant Hawkes were false." DeMuria also states in his affidavit that "in approximately late February of 1999, an acquaintance of ours, who is a journalist and knew defendant Hawkes, reported to us that Hawkes had stated that Mrs. Marshall would never be arrested because she was his friend."

 FN3. DeMuria's affidavit does not state that it is made on personal knowledge.

This evidence is not sufficient to create a triable issue as to whether Marshall and Hawkes were friends or that they acted in concert. First, DeMuria's averments are based on inadmissible hearsay. Second, DeMuria does not provide the details or explain how he subsequently learned that Hawkes's statement that he did not know Marshall was false. Third, DeMuria does not identify either the "acquaintance" who allegedly told him that Hawkes and Marshall were friends or the individual to whom Hawkes allegedly made the statement that Marshall would never be arrested because she was his friend. Fourth, DeMuria does not indicate that this hearsay evidence would be offered in an admissible form at trial.

Because such hearsay evidence would not be admissible at trial, it is not sufficient to create a triable issue of fact on summary judgment. *See ABB Indus. Sys., Inc. v. Prime Tech., Inc.,* 120 F.3d 351, 357 (2d Cir.1997). While Fed.R.Civ.P. 56(e) provides that an affidavit is sufficient, in form, on summary judgment, an affidavit must either contain evidence that would be admissible in content and substance at trial, *see Bernhardt v. Interbank of N.Y.,* 18 F.Supp.2d 218, 225 (E.D.N.Y.1998), or the party offering it must indicate that the evidence will be offered in an admissible form at trial. *See Santos v. Murdock,* 243 F.3d 681, 684 (2d Cir.2001) (holding that absent a showing that the hearsay declarant would testify at trial, the non-moving party's claim cannot survive summary judgment) (citing *McMillian v. Johnson,* 88 F.3d 1573, 1584 (11th Cir.1996)).

Thus, because there is no admissible evidence showing that Hawkes and Marshall were friends, a jury could not permissibly or reasonably infer that they acted in concert to deprive the DeMurias of their right to equal protection. Moreover, contrary to DeMuria's assertion, the fact that Hawkes stated in a report he filed in connection with the Clinton police department's internal investigation that he had "no social contact with the Marshalls during

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 2216524 (D.Conn.)
**(Cite as: 2004 WL 2216524 (D.Conn.))**

these investigations" does not contradict Hawkes's sworn statement and is not sufficient on its own to create a triable issue. Indeed, when the statement in Hawkes's report is read in its proper context, it is readily apparent that Hawkes was merely responding to Chief Faughan's order that he "submit an explanatory report detailing ... any professional or social contact you may have had with Robert and Judy Marshall *during these investigations."* (emphasis added). When considered in the proper context, the statement cannot reasonably be read as contradicting Hawkes's sworn statement, and does not support a permissible inference that Hawkes and Marshall acted in concert.

*9 In the absence of even a mere scintilla of direct or indirect evidence that Marshall, a private citizen, acted in concert with Hawkes, a state actor, and evidence showing that Hawkes and Marshall were friends who acted in concert to deprive the DeMurias of their constitutional rights, the DeMurias have failed to establish the existence of a disputed factual issue as to whether Marshall was a state actor. Accordingly, Marshall is entitled to summary judgment on the DeMuria's § 1983 claim against her.

2. *Disparate Treatment Without Rational Basis*

As previously noted, the DeMurias' § 1983 class of one equal protection claim requires a showing that they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Harlen Assocs. ., Inc. v. Incorporated Village of Mineola,* 273 F.3d 494, 499 (2d Cir.2001) (quoting *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam)). Hawkes and Marshall maintain that they are entitled to summary judgment on this issue because the DeMurias have no evidence showing that they were intentionally treated differently from other residents of Clinton.[FN4] The court agrees.

> FN4. In support of their motion, the defendants rely on Hawkes's affidavit which states that "in connection with my investigation of the DeMuria complaints and in my application for the arrest of Judith Marshall I acted no differently than I normally would under the same circumstances. I always attempt to first mediate disputes between neighbors, particularly when there is no violence or property damage involved. I apply for arrest warrants only when I believe there is probable cause to arrest and that an arrest is in the best interests of the community and the alleged victim." Hawkes also states that he did not understand why the prosecutor rejected his first application for an arrest warrant for Marshall because he thought his statement that "Marshall had an ongoing dispute with DeMuria over surface water runoff" showed a connection between Marshall and DeMuria.

The only evidence the DeMurias offer in support of this element of their § 1983 claim is, once again, DeMuria's affidavit. Specifically, his averments that Hawkes "intentionally omitted information crucial to the establishment of probable cause when he applied for an arrest warrant" for Marshall, that DeMuria and his wife had lived in Clinton for many years and that "[n]o other citizen of this community has been deprived of police protection the way we have been. No other citizen of this community has had the experience of a stalker and harasser of their family given police protection and encouragement in their unlawful conduct as defendant Hawkes did for defendant Marshall."

These self-serving, conclusory, factually unsubstantiated, and unexplained assertions of facts that would not normally be within DeMuria's personal knowledge are insufficient to establish a genuine issue of fact as to whether Hawkes intentionally treated the DeMurias differently than other citizens of Clinton.

*See Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996) ("conclusory statements, conjecture, or

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 2216524 (D.Conn.)
**(Cite as: 2004 WL 2216524 (D.Conn.))**

speculation by the party resisting the motion will not defeat summary judgment."); 

*Delaware & Hudson Ry. Co. v. Conrail,* 902 F.2d 174, 178 (2d Cir.1990) ( "Conclusory allegations will not suffice to create a genuine issue"). Indeed, this evidence does not even meet the "mere scintilla" threshold. *See In re Unisys Sav. Plan Litig..,* 74 F.3d 420, 433 (3d Cir.1996).

Significantly, DeMuria does not provide any facts to support his assertion that "others" were treated differently, does not identify the "other" residents of Clinton who allegedly were treated differently, and does not explain the basis for the allegation that Hawkes acted with the intent to discriminate against them. Rather, the unsubstantiated statements in DeMuria's affidavit merely track the language of the complaint, which alleges generally that Hawkes provided them a different standard of police protection than that typically afforded other residents of Clinton. Just as the Second Circuit found the complaint's allegations barely sufficient to meet the minimal level for class of one equal protection claims at the pleading level, *see DeMuria v. Hawkes,* 328 F.3d 704, 706 (2d Cir.2003), this court finds the same unsubstantiated allegations in DeMuria's affidavit insufficient to show the existence of a disputed factual issue as to whether Hawkes intentionally treated them differently from other residents of Clinton.

**\*10** For these reasons, the DeMurias' § 1983 class of one equal protection claim fails.

B. *Intentional Infliction of Emotional Distress*

Hawkes and Marshall also move for summary judgement on the DeMurias' claim that the conduct of Hawkes and Marshall was extreme and outrageous and was carried out with the knowledge that it would, or probably would cause the DeMurias to suffer emotional distress. They argue that the alleged conduct was not extreme and outrageous as a matter of law, that there is no evidence that their conduct was intentional, and that there is no evidence that the DeMuria's suffered extreme emotional distress.

There are four elements that a plaintiff must prove to prevail on a claim of intentional infliction of emotional distress: (1) that the defendant intended to inflict emotional distress or that he knew or should have known that such distress would result; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct caused the plaintiff's distress; and (4) that the emotional distress the plaintiff sustained was severe. *See Appleton v. Board of Ed. of Stonington,* 254 Conn. 205, 210-11, 757 A.2d 1059 (2000); *Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986). Whether the alleged conduct is extreme and outrageous is an issue for the court in the first instance. *See Appleton,* 254 Conn. at 210, 757 A.2d 1059; *Collins v. Gulf Oil Corp.,* 605 F.Supp. 1519, 1522 (D.Conn.1985). Only where reasonable minds could differ does that determination become an issue for the jury. *See Bell v. Board of Educ. of West Haven,* 55 Conn.App. 400, 739 A.2d 321 (1999). Courts have imposed liability for intentional infliction of emotional distress only where the conduct exceeds all bounds usually tolerated by decent society and is so outrageous in character, so extreme in degree, and is calculated to cause, and does cause, mental distress of a very serious kind. *See, e.g., Carrol v. Allstate Ins. Co.,* 262 Conn. 433, 433, 815 A.2d 119 (2003); *Petyan,* 200 Conn. at 254, 510 A.2d 1337; *Reed v. Signode Corp.,* 652 F.Supp. 129, 137 (D.Conn.1986).

Here, there is no evidence in the record before the court that would cause reasonable minds to differ in the conclusion that the alleged conduct fails to meet the required threshold of outrageousness. Moreover, the DeMurias have not provided sufficient factual support for the other elements of this cause of action, i.e., that the emotional distress they suffered was severe, and that Marshall and Hawkes acted intentionally or that they knew or should have known that their conduct was likely to cause emo-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 2216524 (D.Conn.)
(Cite as: 2004 WL 2216524 (D.Conn.))

Page 10

tional distress. The only evidence the DeMurias submit to substantiate their claim is DeMuria's self-serving affidavit stating that the alleged acts of harassment and Hawkes's failure to investigate and prosecute Marshall was "extremely upsetting to my wife and me and caused us a great deal of emotional suffering." This factually unsupported, conclusory assertion is woefully inadequate and thus is not sufficient to create a triable issue as to the other elements of this cause of action.

*11 Accordingly, Marshall and Hawkes are entitled to summary judgment on the DeMurias' claim of intentional infliction of emotional distress.

## CONCLUSION

For the foregoing reasons, the motion of Judith Marshall for summary judgment [doc. # 49] and the motion of Albert Hawkes for summary judgment [doc. # 52] are GRANTED.

SO ORDERED.

D.Conn.,2004.
DeMuria v. Hawkes
Not Reported in F.Supp.2d, 2004 WL 2216524 (D.Conn.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.