IN THE UNITED STATES DISTRICT COURT
<u>FOR THE NORTHERN DISTRICT OF NEW YORK</u>

LOUIS: BRIAN OLESEN, II,
BARBARA OLESEN,
AMERICAN SHOOTERS SUPPLY, INC:,

        Plaintiffs,

                                          06-CV-0959FJS/DRH

    v.

JOHN MORGAN, Special Agent of the
Federal Bureau of Alcohol, Tobacco, and
Firearms,

        Defendant.

## PLAINTIFFS' RESPONSE TO DEFENDANT'S
## STATEMENT MATERIAL OF FACTS

      First, the form of the Defendant's Statement of Material Facts is insufficient as it fails to separate each "fact" into a separate paragraph. As a result, it is impossible to merely admit or deny the paragraphs as each one contains multiple assertions.

      Second, the Defendant's Statement of Material Facts is insufficient because all of the purported "factual" statements are based upon unsupported inadmissible hearsay that can neither be admitted nor denied by the Plaintiffs at this point in the litigation. Specifically, because the motion is made pre-answer, there has been no discovery in this case and the Defendant's assertions are supported only by Declarations made by persons who do not have personal knowledge of the "facts" asserted there in. The O'Connor declaration is particularly unreliable as it is based upon his *review of the ATF records* and not his personal knowledge of the facts. The underlying ATF documents are not provided

and Affidavits from individuals who were actually involved in the investigation are not provided. Thus, there is no record for the Plaintiff to cite in opposition of the hearsay allegations.

Pursuant to N.D.N.Y Local Rule 7.1, a Statement of Material Facts requires the moving party to assert only facts which the moving party contends there exists no genuine issue. The allegations in Morgan's Statement of Material Facts are inappropriate because they are *known* by Morgan to be questions of fact still in issue until discovery is conducted. Accordingly, Plaintiffs assert that in addition to the arguments in the memorandum of law, the Defendant has failed to meet his burden in providing an adequate Statement of Material Facts in moving for Summary Judgment and the Summary Judgment motion should be denied on that basis.

Not waiving the aforementioned objections, Plaintiffs offer the following as a response to Defendant's Statement of Material Facts:

### FEDERAL FIREARMS LICENSING

1. Plaintiffs can neither admit nor deny the statements asserted in the Declaration of Patricia Power. The statements asserted in paragraph one are not within the knowledge of the Plaintiffs. Furthermore, they are based upon a hearsay Declaration that purports to rely on documents controlled by the Federal Firearms Licensing Center. Plaintiffs do not have these records and they have not been provided as Exhibits.

2.      Plaintiff admits that James Frampton, on behalf of the limited liability corporation, BJ Partners LLC, applied for an FFL, naming James Frampton and Louis Brian Olesen, II, as 'members' of the corporation. It is unknown to the Plaintiffs the exact date of application. It is believed that the application was for premises located at 1814 Central Avenue, Albany New York, and listed B&J Shooting Supplies as the business or trade name.

3.      Plaintiffs admit that in or around January, 2003, the FFL application for BJ Partners LLC, was withdrawn.

4.      Plaintiffs admit that Louis Brian Olesen, II, applied for an FFL for premises located at 1814 Central Avenue, Albany New York, listing B&J Guns as the business or trade name. Plaintiffs admit that Mr. Olesen withdrew his application for a federal firearms license, and sent ATF a handwritten note at the request of the ATF. Plaintiffs do not have a copy of the note.

5.      Plaintiffs do not believe that on May 07, 2003, "Guns, Inc.," applied for an FFL for premises location at 1702 Central Avenue, Albany New York. Plaintiffs admit an application was submitted by Barbara Jean Olesen, President of ASSI. Plaintiffs can not admit or deny when the application was received.

6.      Plaintiffs can neither admit nor deny that on July 23, 2003, ATF's Office of Field Operations conducted an application. Plaintiffs admit that ATF conducted an application

inspection. Plaintiffs admit that on or about August 2003, ATF issued an FFL to Barbara Jean Olesen.

7.      Plaintiffs admit that in or around September, 2004, Brian Olesen, applied for an FFL listing Guns, Inc. as a business or trade name, for premises located at 350 Columbia Turnpike, East Greenbush New York. Plaintiffs can neither admit nor deny the ATF received the application on or about November 30, 2004.

8.  Plaintiffs admit that during or near February, 2005, ATF conducted an application inspection of Guns, Inc. Plaintiffs admit that Mr. Olesen added B&J Guns East as the business or trade name. Plaintiffs admit that Brien Olesen is listed as President and the only responsible person associated with the business. Plaintiffs admit that ATF issued an FFL to Guns, Inc.

9.      Plaintiffs admit that on or about February 4, 2009, the ATF conducted an inspection of FFL 6-14-00500 for Barbara Jean Olesen. Plaintiffs deny that it was at that time of the inspection that ATF was advised the business was incorporated as American Shooter Supply, Inc (ASSI).

10.     Plaintiffs admit that on March 17, 2009, Barbara Olesen reapplied for a Federal firearms license for ASSI for premises located at 1702 Central Avenue, Albany New York, with a trade or business name of B&J Guns. Plaintiffs admit the application lists Barbara Jean Olesen as the sole owner. Plaintiffs can neither admit nor deny that the ATF

received the application on or about April 16, 2009. Plaintiffs admit that the ATF issued FFL 6-14-01196 to American Shooter Supply, Inc. on June 17, 2009.

11.     Plaintiffs can neither admit nor deny that the Federal Firearms Licensing Center was unable to locate any records regarding a corporate entity B&J Guns, Inc. B&J Guns is not incorporated but rather a d/b/a or doing business as.

### B.  2002-2003 CRIMINAL INVESTIGATION OF BRIAN OLESEN

12.     Plaintiffs are unaware of the dates and times that Brian Olesen was interviewed regarding allegations that his business partner, James Frampton, was stealing firearms from the inventory of their retail firearms business, d/b/a American Tactical Systems, d/b/a B&J Shooting Supply, 1814 Central Avenue, Albany, New York as there has been no discovery to date and the statement in the Declaration of Rory O'Conner is not based on his *personal* knowledge but rather states "ATF has documented the following:". We do not know who at the ATF made such documentation. Accordingly, each and every paragraph from paragraph four to twenty-six of Rory O'Conner's Declaration is hearsay and inadmissible for consideration of a Summary Judgment Motion. This is a continuing objection to each of the paragraphs below in the Defendant's Statement of Material Facts that cite the Declaration of Rory O'Conner as support. Plaintiffs admit that Mr. Frampton had an FFL in his own name. Plaintiffs deny the statement that Brian M. Olesen did not hold a Federal firearms license as it does not state a time period for same. Plaintiffs deny the statement that Mr. Oleson was not indentified as a responsible person in the business

as it does not state a time period for this statement or what business the statement is talking about. Brian Olesen eventually obtained an FFL.

13.     Plaintiffs can neither admit or deny when exactly the interview occurred that was conducted at the ATF Albany Field Office, with Mr. Olesen's attorney, Michael Rhodes Devey, present, but admits that such a meeting occurred. Brian Olesen admits that at that meeting he informed ATF agents that Mr. Frampton was falsifying his Acquisition and Disposition (A&D) Book, that Mr. Frampton was removing firearms from the inventory of B&J Shooting Supply, recording the firearms as having been sold to other persons, and then selling the firearms online for personal profit.

14.     Plaintiffs neither admit nor deny the when the ATF initiated a criminal investigation of B&J Shooting Supplies.

15.     Plaintiffs can neither admit nor deny what Mr. Frampton advised the ATF. This statement is hearsay as discussed above, and there has been no discovery. Plaintiffs admit that at some point in December, 2002, operations at B&J Shooting Supply were suspended, and at some point thereafter Frampton surrendered his FFL license.

16.     Plaintiffs admit Mr. Olesen and his attorney met with ATF at the ATF Albany Field Office in approximately December 2002. Plaintiffs admit that ATF agents informed Mr. Olesen that no further firearms transfers could occur at B&J without Frampton on the premises.

17.     Plaintiffs admit on or about December 18, 2002, Olesen, Olesen's attorney, and Frampton met with ATF agents at the Albany Field Office to discuss ending their partnership and dissolving their business. Plaintiffs admit Mr. Olesen stated that he would apply for a federal firearms license. Plaintiffs can neither admit nor deny that Frampton *again* indicated that he would surrender his federal firearms license. Plaintiffs admit that Brian Olesen consented to ATF conducting an inventory of the firearms at B&J Shooting Supply, and that upon completion of the inventory, they would return of guns that were being fixed and not owned by B&J, they would delivery of guns previously purchased and not owned by B&J, that thereafter B&J Shooting Supply would close. Plaintiffs are unaware of what Frampton consented to for the reasons stated above.

18.     Plaintiffs can neither admit nor deny that December 18, 2002, RAC Morgan, another ATF Special Agent and an ATF Inspector conducted a separate interview of Frampton as discovery has not been conducted and the declaration of Rory O'Conner is inadmissible hearsay. Plaintiffs have the same objection to whether Frampton alleged, among other things, that he believed Olesen unlawfully acquired at least two machine guns (see 18 U.S.C. § 922(o)), as well as unlawfully purchasing a firearm from Mike Scarnato, a machinist who performed gun-smithing for Olesen and Frampton. Plaintiff is unaware if the Defendants are asserting the following as a statement of material fact: (Of note: In an unrelated transaction, Mr. Scarnato was late convicted in Federal Court for Federal firearm violations)." Plaintiff is unable to admit or deny the statement as it does not make sense and appears to be a typographical error. Plaintiffs are unsure what "late convicted" means. Furthermore, In the event it is not an error, plaintiffs assert, that any

facts regarding Scarnato are not material nor supported by any admissible evidence at this time.

19.     Plaintiffs admit at some point in 2002, RAC Morgan, an ATF Special Agent and an ATF Inspector conducted an inventory of the firearms and records at B&J Shooting Supply. Plaintiffs can not admit or deny what Morgan "observed" during the inspection, RAC Morgan observed, on display, a Bushmaster semiautomatic assault type rifle with a pistol grip and a threaded barrel that enabled it to accept an attachable muzzle break. Plaintiffs can neither admit nor deny that this modification, in conjunction with the pistol grip, placed the rifle in violation of 18 U.S.C. § 922(v) (since repealed) (making it unlawful to possess a semi-automatic assault weapon), as the defendant in its own material statement of facts seems to admit that the rifle was doubted by ATF as being unlawful (*Compare*, O'Connor Dec ¶11 with ¶17). Plaintiffs admit that RAC Morgan seized a Bushmaster firearm that was the personal property of James Frampton and not an item for sale or part of the inventory of B& J Shooter Supply.

20.     Plaintiffs deny On December 19, 2002, during the inventory at B&J Shooting Supply, RAC Morgan noted that Olesen was telling customers that he would open for business since ATF finished its inspection. Plaintiffs admit that RAC Morgan told Olesen that he could not sell firearms at B&J Shooting Supply without Frampton's present. Plaintiffs deny that RAC Morgan cancelled the inventory and admit that ATF left the premises.

21.     Plaintiffs admit that on or about December 20, 2002, RAC Morgan, an ATF Special Agent and an ATF Inspector met with Frampton and Olesen at B&J Shooting Supply. Plaintiffs admit that it was agreed that ATF would lock the shop and hold the keys until after the holidays, at which time ATF would continue its inventory. Plaintiffs admit that the inventory commenced again on December 30, 2002.

22.     Plaintiffs admit that on or about January 2, 2003, the ATF continued the inventory of the firearms and records at B&J Shooting Supply. Plaintiffs admit that during the inventory, the ATF inventoried an RFI (Indian made), 7.62 mm rifle. Plaintiffs deny that the rifle was illegal and assert it was properly entered into the records and books of B&J Shooter Supply.

23.     Plaintiffs can neither admit nor deny that on January 8, 2003, RAC Morgan and two ATF Special Agents executed a federal search warrant at B&J Shooting Supply, seizing firearms records. Plaintiffs can neither admit nor deny that the warrant was issued by the United States District Court for the Northern District of New York, and was based upon probable cause for making false entries in the A&D Book and possession of a semi-automatic assault rifle in violation of 18 U.S.C. §§ 922(m), 924(a)(3)(a) and 922(v) as they are not in possession of any such warrant.

24.     Plaintiff can neither admit nor deny that on January 31, 2003, ATF Special Agents executed a second federal search warrant at B&J Shooting Supply, for unlawful possession of four firearms, seizing the four firearms as they are not in possession of said

search warrant. Plaintiffs admit that certain firearms were seized from B&J Shooting Supply.

25.     Plaintiff can neither admit nor deny that on February 6, 2003, RAC Morgan, accompanied by an ATF Special Agent, an ATF Inspector, and ATF Acting Area Supervisor (Industry Compliance), and an ATF Counsel met with representatives from the United States Attorney's Office, Northern District of New York, to discuss the proper course for pursuing possible criminal prosecution of Olesen and Frampton for firearms offenses and record-keeping violations. Plaintiffs can neither admit nor deny that at that time, concerns were raised about whether Frampton's record keeping violations constituted a misdemeanor under 18 U.S.C. § 922(m) (making it unlawful for a licensed firearms dealer to knowingly make a false entry in any required records) or a felony under 18 U.S.C. § 924(a)(1)(M) making it unlawful to knowingly make a false statement or representation with respect to information required to be kept by a licensee). Plaintiff can neither admit nor deny that the ATF Firearms Technology Branch expressed some doubt as to its previous determination that a Bushmaster semi-automatic rifle actually qualified as an unlawful semi-automatic assault rifle. Plaintiff can neither admit nor deny that based upon these considerations, the United States Attorney's Office decided not to pursue charges.

26.     Plaintiff can neither admit nor deny that on January 8, 2003, New York State Supreme Court Justice Bernard Malone faxed RAC Morgan a copy of an Order to Show Cause indicating the Court had appointed Paul Devane as Receiver in the dissolution of

B&J Shooting Supply. Plaintiffs admit that as part of the dissolution, Brian Olesen and Frampton were forced to surrender the firearms inventory to auctioneer for liquidation.

27.     Plaintiff can neither admit nor deny that on April 18, 2003, Mr. Frampton, through is attorney, surrendered his federal firearms license.

## C.  2004 INVESTIGATION OF OLESEN FOR POSSIBLE INVOLVEMENT IN HIDDEN OWNERSHIP

28.     Plaintiffs admit that on December 27, 2002, Brian Olesen submitted an application to ATF to obtain a federal firearms license. Plaintiffs admit that Brian Olesen submitted an application to the County of Albany to become a state-licensed pistol dealer. Plaintiff can neither admit nor deny that in March 2003, during the pendency of the county application, New York State Supreme Court Justice Bernard Malone contacted RAC Morgan concerning Olesen's involvement with the ATF and his suitability to become a licensed firearms dealer. There has been no discovery and such statement in upon hearsay. Plaintiffs can neither admit no deny whether RAC Morgan advised Justice Malone that Olesen was the subject of an ATF criminal investigation for federal firearms offenses. Such statement is based upon hearsay. Plaintiffs can neither admit nor deny that at that time, Justice Malone informed RAC Morgan that he would not approve Olesen's county application because of Olesen's history of misdemeanor arrests.

29.     Plaintiffs admit that on or about April 03, 2003, Brian Olesen withdrew his application for an FFL because an ATF inspector told him that he should. Plaintiffs admit that Brian Olesen at some point submitted to ATF a handwritten note, stating that he was withdrawing his application because his landlord would not allow a continuance of the

lease at 1814 Central Avenue, Albany, New York, the address of the former B&J Shooting.

30.     Plaintiffs admit that on or about May, 2003, Barbara Olesen submitted an application for a federal firearms license at 1702 Central Avenue, Albany, New York, the proposed location for a new retail firearms business, B&J Guns. Plaintiffs can neither admit nor deny what the ATF "believed" in the following assertion: "Because of the proximity in time between the denial of Olesen's application for a state piston dealer's license, Olesen's withdrawal of his application for a state pistol dealer's license, and his mother's application of her own license (first by Barbara Olesen on behalf of Guns, Inc. and later changed to single ownership to "Barbara Jean Olesen, d/b/a American Shooter Supply"), Plaintiff can neither admit nor deny that ATF "believed" that Olesen may be attempting to establish a hidden ownership, in violation of 18 U.S.C. § 922(a)(1)(A) and 18 U.S.C. § 924(a)(1)(A)". Such a statement is based on hearsay. Further it is unknown how the ATF, an agency, could have a "belief" of anything. If there were individual agents or employees with those beliefs it would be necessary for them to be deposed or submit declarations in support of such a statement.

31.     Plaintiffs can neither admit nor deny that in July 2003, RAC Morgan met with ATF's Industry Operations and ATF Counsel as it is based upon hearsay and no discovery has taken place. Plaintiffs can not admit or deny what was said or determined by Defendant, ATF Industry Operation an ATF counsel at the purported meeting as the statement is based upon hearsay and no discovery has occurred. Plaintiffs admit that on Barbara Olesen furnished ATF with an affidavit stating she would be the sole owner of the gun shop. Plaintiffs can neither admit nor deny that the "ATF Inspector" filed a report

recommending approval of the application but also recommending a follow-up inspection be conducted after one year as such statement is based upon hearsay and no discovery has been conducted.

32.     Plaintiffs can neither admit nor deny the inner workings of the ATF agency as it relates to this case. No discovery has been conducted and the statements are based solely upon the hearsay declaration of Rory O'Conner. Therefore, Plaintiffs can neither admit nor deny that in September 2004, RAC Morgan assigned an ATF Special Agent to investigate whether Barbara Olesen was actually acting as the owner of B&J Guns, or whether Brian Olesen was acting as the owner and dealing in firearms without a license. For the aforementioned reason, Plaintiffs can neither admit nor deny that a United States Postal Service mail cover was requested. Plaintiffs admit that they became aware that subpoenas were served upon its business' vendors, banks, and service providers and that those entities were threatened not to do business with Plaintiffs. Plaintiffs can neither admit nor deny that "limited" visual surveillance was conducted in an attempt to determine whether Olesen or his mother was acting in an ownership capacity. Plaintiffs admit that Morgan ordered surveillance of their business. Plaintiffs deny that the results of the mail cover and the responses to the subpoenas demonstrated that Olesen- not his mother- was acting as the owner and operator of American Shooter Supply/ B&J Guns. Furthermore Plaintiffs deny that this is a valid statement for a statement of a material fact as it is based solely on inadmissible hearsay.

33.     Plaintiffs can neither admit nor deny that the investigation into Olesen's conduct was "cut short" when Olesen applied for his own federal firearms license for B&J Guns East, located at 350 Columbia Turnpike, East Greenbush, New York. This statement is

based upon hearsay and can not be addressed without discovery. However, it seems disingenuous to say that if Brian Olesen was deemed to have been breaking FFL regulations by the ATF, that his mere application for an FFL would "cut short'' any investigation of such crimes as the Defendant asserts.

34.     Plaintiff can neither admit nor deny that though ATF's criminal investigation remained open, the ATF Area Supervisor, the ATF Director of Industry Operations, and the Assistant Chief Counsel, New York Field Division, concluded that there were insufficient grounds at that time to deny Olesen's applications at B&J Guns East. Plaintiffs, for the reasons stated above, can neither deny nor admit that it was determined that ATF should grant the license now, and revoke the license later if sufficient grounds developed. *See* 18 U.S.C. § 923(d)(1)(C) (applications shall be approved unless, among other things, the applicant has willfully violated provisions of the *Gun Control Act*). Plaintiffs can neither admit nor deny that with the issuance of a license to Brian Olesen, ATF determined not to further pursue the hidden ownership investigation as the statement is based upon hearsay and no discovery has occurred in this case.

   Dated: January 15, 2010

                                        Respectfully Submitted,

                                        Dreyer Boyajian LLP

                                        S/William Dreyer

                                        By: WILLIAM DREYER

J:\WJD\Olesbr (Morgan)-06118\Pleadings\Plaintiffs Statement of Material Facts 01.12.10.doc